464 P.2d 788

**BOLO CORPORATION, a California corporation, Appellant,**

v.

**HOMES & SON CONSTRUCTION CO., Inc., an Arizona corporation, Appellee.**

**No. 9674.**

Supreme Court of Arizona,
In Division.

Jan. 16, 1970.

Rehearing Denied Feb. 17, 1970.

Shimmel, Hill & Bishop, Phoenix, for appellant.

Moore, Romley, Kaplan, Robbins & Green, Phoenix, for appellee.

HAYS, Justice.

The appellant, Bolo Corporation, has appealed an order of the Superior Court granting the plaintiff-appellee's motion to compel arbitration. The argument raised in opposition is that the plaintiff, by its actions had waived its right to compel arbitration and must therefore proceed with the civil action originally brought. We agree with the position taken by the appellant for the reasons stated below.

The parties entered into a written contract, executed on the 27th day of December, 1963, wherein the appellee, Homes and Son Construction Co., Inc., agreed to construct for the appellant a shopping center building to be known as "Mesa Plaza Shopping Center," and to be located at Main Street and Lazona Drive, Mesa, Arizona.

The contract contained a "General Conditions" provision which required that any dispute arising out of the contract or the performance of the contractor be settled by arbitration.

CONTRACT EXHIBIT NUMBER 2:
*GENERAL CONDITIONS*

\* \* \* \* \* \*

"I. *Arbitration.*—If at any time any controversy should arise between the Owner and the Contractor regarding anything pertaining to this Agreement and which the parties hereto do not promptly adjust and determine, or which the Owner cannot decide to the satisfaction of both parties, the written orders of the Owner to the Contractor shall be followed. The controversy existing between the parties shall be submitted to and determined by arbitration. Each of the parties hereto shall select an arbitrator and the arbitrators so selected by them shall select a third person to serve as arbitrator with them. The parties hereto agree to be bound by the award in such arbitration." Abstract of the Record at p. 217.

Construction under the contract began in early 1964. In September of that year, with the structure nearing completion, a dispute arose between the parties as to variances between the quality of the performance and the plans and specifications re-

ferred to in the contract. At that point there was a balance of $87,000.00 owing and unpaid under the agreement, which the appellant withheld pending satisfactory completion of the project in accordance with the specifications.

The correspondence between the parties during this period is summarized in the affidavit of W. E. Homes, Jr., an officer of the plaintiff corporation; which affidavit is attached to plaintiff's motion for leave to amend the complaint. It is therein stated that in September of 1964, the project having been substantially completed, Homes & Son sent its final billing to Bolo. Bolo, in response, indicated that it was withholding the final payment because of various questions regarding cost charges. On October 12, 1964, plaintiff requested arbitration and named one arbitrator. Homes alleges that on December 26, 1964, Bolo made an expression that arbitration was acceptable, but declined to appoint an arbitrator or to enter into formal negotiations until there could be an audit of plaintiff's books. According to Homes, an audit was done, but Bolo continued to postpone arbitration pending "more information on additional matters." Finally, on November 12, 1964, or thereabouts, the defendant corporation indicated its unwillingness to arbitrate.

The first formal action taken by either party in an attempt to resolve the dispute was the filing by Homes & Son of a complaint at law charging Bolo with a breach of the contract and seeking a money judgment. In conjunction with the filing of the complaint, plaintiff commenced garnishment proceedings against several tenants of the defendant, said garnishees being lessees of the premises in question.

Bolo answered the complaint on January 14, 1965, attaching thereto a counterclaim alleging failure, negligence and refusal on the part of Homes & Son to perform its obligations under the contract and praying judgment in the sum of $10,200.00, plus such additional sums as might thereafter be determined to be the result of the plaintiff's failure to perform the contract. Plaintiff filed a reply on January 29, 1965.

Correlatively and simultaneous therewith, writs of garnishment directed toward tenants of the shopping center were issued, answers were filed thereto by the respective garnishees and there was tender of issue.

It was not until the 24th day of June, 1965, or thereabouts, nealy six months after the original filing of the lawsuit, that the appellee filed a motion for leave to amend the complaint and for an order to compel arbitration as is provided for under the Uniform Arbitration Act, A.R.S. § 12–1502, subsec. A [1].

The order of the trial court directing that arbitration be commenced was objected to by the appellant and it is the correctness of the trial court's ruling which we are called upon to decide.

The question thus presented is whether or not there has been a waiver, mutual rescission, repudiation, laches or estoppel by or on behalf of the plaintiff in the enforcement of the arbitration clause.

One need only look at the Arizona Statutes to discover that the express language of the Arbitration Act as adopted by the legislature acknowledges revocability. The statute, A.R.S. § 12–1501, Validity of Arbitration Agreement, is couched in these terms:

"A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter

---

1. § 12–1502. Proceedings to Compel or Stay Arbitration.

A. On application of a party showing an agreement described in § 12–1501, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party. Otherwise the application shall be denied.

arising between the parties is valid, enforceable and irrevocable, *save upon such grounds as exist at law or in equity for the revocation of any contract.*" (Emphasis added).

The general rule governing the waiver or repudiation of such agreements when combined with the public policy which favors the enforcement of arbitration is well stated in the opinion of United Paper Machinery Corp. v. DiCarlo, 19 A.D.2d 663, 241 N.Y.S.2d 711 (1963):

"Arbitration is by consent and those who agree to arbitrate should be made to keep their solemn, written promises. Such is New York's public policy, plainly written in article 84 of the Civil Procedure Act. The courts should follow a 'liberal policy of promoting arbitration both to accord with the original intention of the parties and to ease the congestion of court calendars.' "

\* \* \* \* \* \*

"There is, however, nothing irrevocable about an agreement to arbitrate. Both of the parties may abandon this method of settling their differences, and under a variety of circumstances one party may waive or destroy by his conduct his right to insist upon arbitration."

A further explanation of the rule is found in the case of In re Aller's Petition, 47 Cal.2d 189, 302 P.2d 294 (1956), in which the California Supreme Court quoted from Drake v. Stein, 116 Cal.App.2d 779, 254 P.2d 613, and Dessert Seed Co. v. Garbus, 66 Cal.App.2d 838, 847, 153 P.2d 184, 189, respectively:

"Although one party may not by himself 'rescind' a contract, he can wrongfully 'repudiate' it. What is the effect of his repudiation? To answer this, we must first interpret his expressions and determine the coverage of his repudiation. Suppose first that he repudiates the agreement to arbitrate itself. By such a repudiation he does not deprive the other party of his right to arbitration; and if the repudiator brings an action in breach of his valid arbitration agreement the defendant can defend on the ground that arbitration is a condition precedent, or under a statute can obtain a stay or an order to arbitrate, or can counterclaim for damages. But such a repudiator has himself no right to arbitration. The other party can now bring his action in reliance on the repudiation, or otherwise change his position in reliance. Thereafter, the repudiator has no power of retraction and cannot insist on the remedy of arbitration." 302 P.2d at 297.

\* \* \* \* \* \*

"It is well settled that an abandonment of a contract may be implied from the acts of the parties and this may be accomplished by the repudiation of the contract by one of the parties and by the acquiescence of the other party in such repudiation." 302 P.2d at 299.

See also, Galion Iron Works & Mfg. Co. v. J. D. Adams Mfg. Co., 128 F.2d 411 (7th Cir., 1942) and Brunzell Const. Co. v. Harrah's Club, 253 Cal.App.2d 764, 62 Cal. Rptr. 505 (1967).

The Arizona Uniform Arbitration Act provides for the specific enforceability of an agreement to arbitrate,[2] and it is clear that such enforcement may be prayed for by either party upon the refusal of the other to honor that contract provision. However, if either party, by his conduct can be said to have waived his right to arbitrate, the other party is placed in a position of choice: Either to compel arbitration under the contract,[3] or to acquiesce in the waiver thereby making the revocation complete and binding on both.

The issue thus becomes whether an election to litigate is a waiver of arbitration within the above rule, and if so, was it too late under the facts of this case for the appellee to amend its complaint and attempt to compel arbitration under the agreement.

The case of the "Belize," 25 F.Supp. 663 (D.C.S.D. N.Y. 1938), clearly parallels our

2. A.R.S. § 12–1502, subsec. A

3. A.R.S. § 12–1502, subsecs. C & D.

instant case on this particular issue. The facts in the "Belize" are simply that the libellant (plaintiff), chartered a vessel to the respondent (defendant). Under the terms of the contract the defendant was to return the vessel in good condition. Despite the fact that the contract contained an arbitration clause, the plaintiff commenced a suit in admiralty against the defendant alleging damages to the vessel and seeking an award of money damages. The defendant answered the libel (complaint); entered a general denial; and proposed interrogatories to be answered by the plaintiff. The plaintiff filed exceptions to the interrogatories. With the suit in this condition the plaintiff made a motion that the defendant be ordered to proceed to arbitration and that the case be stayed from further proceedings. The defendant resisted the motion, claiming that the plaintiff had waived its right to compel arbitration. The court held that the contract clause had been waived and thereupon denied the plaintiff's motion.

Note the case of Anderson v. Twin City Rapid Transit, 250 Minn. 167, 84 N.W.2d 593 (1957), wherein the Minnesota Supreme Court in discussing this same issue of waiver stated:

"The plaintiffs, whether bound by the clause or not, repudiated it by commencing this lawsuit and the defendants joined in the repudiation by answering to the merits without a demand for arbitration or a motion to stay the suit until arbitration could be had. Almost uniformly such conduct on the part of the parties constitutes an abandonment or waiver of the right to arbitrate and a consent to the submission of the controversy to the courts."

\* \* \* \* \* \*

"Commencement of suit in a court rather than reliance upon arbitration, with answer by the opposing party upon the merits, is a waiver of the right to arbitrate by both parties. Galion Iron Works & Mfg. Co. v. J. D. Adams Mfg.

Co., 7 Cir., 128 F.2d 411." 84 N.W.2d at 602.

We further call attention to the very recent decision in Ojus Industries, Inc., v. Mann, 221 So.2d 780 (D.C. of App., Fla., 1969).

"Waiver in this connection does not depend on timing of the motion to compel arbitration (where not unreasonably delayed), but rather on the prior taking of an inconsistent position by the party moving therefor. Thus, where a plaintiff, in disregard of his right to arbitrate, files suit for determination of the controversy, he will be held to have waived his right to compel arbitration thereof. The same will apply to a defendant who by counterclaim submits the matter, which was to be arbitrated, to the court for determination." 221 So.2d at 782.

It is the appellee's position that the filing of the complaint with the pre-judgment garnishment appended thereto, is not sufficiently inconsistent with the agreement to constitute a waiver of its right to demand arbitration. As authority it offers the case of Homestead Savings & Loan Ass'n. v. Superior Court, 195 Cal.App.2d 697, 16 Cal.Rptr. 121 (1961). In that case, there arose a dispute as to the performance of a building contract which contained a standard arbitration clause. When the dispute arose, the contractor filed a claim under the California Mechanics Lien statute. Thereafter, the contractor filed an action against the owner to foreclose the lien; including in the complaint allegations of an arbitration agreement and a request that the present proceeding be stayed pending a submission of the dispute to arbitration. The owners applied to the California Court of Appeals for a writ of mandate directed to the lower court to vacate its order staying the proceedings. They argued that the contractor repudiated the arbitration agreement by recording the lien claim and also by filing his complaint to foreclose. The court held that the filing of a mechanics lien is not a remedy inconsistent with, or a

repudiation of arbitration, and is not a waiver. The court reasoned that the party had a statutory right to file a mechanics lien to protect his interest in the property, the purpose of the lien being to preserve the status quo. The court further found that the real party in interest also had a statutory right to file a separate action to obtain a personal judgment against a person personally liable on such debt, notwithstanding his lien. In view of this, the court held that the filing of the lien was not inconsistent with arbitration.

The appellee seeks to draw an analogy between the filing of the lien in the Homestead Savings case, supra, and the filing of the complaint accompanied by garnishment in the instant case. It is argued that the sole purpose to be served by the filing of the pre-judgment garnishments was to protect the plaintiff's future interest in a successful recovery from the defendant, just as the mechanics lien was filed to protect the status quo of the property.

We find, however, that there is an important distinction. The filing of a mechanics lien was held by the California court not to be inconsistent with arbitration since it is an independent statutory remedy and because it is within the equitable power of the court to order execution of the lien as a means of enforcing the arbitration award. The same is not true of garnishment. The procedure for a garnishment in advance of judgment is keyed specifically to an action at law. The arbitration statute does not provide for garnishment proceedings in conjunction therewith, nor does the attachment chapter of the Revised Statutes give any authority for a pre-arbitration award attachment or garnishment. The relief asked for by the plaintiff-appellee in its original complaint was wholly inconsistent with the idea of arbitration.

By bringing an action in contract and attaching thereto a proceeding in garnishment, the plaintiff made a tactical election of remedy. Homes believed that the defendant was on the brink of insolvency and concern arose as to whether Bolo would be financially able to satisfy any judgment or award that might be entered against them. By garnishing the income producing assets of the defendant, Homes was seeking to insure that there would be a fund out of which a future award of damages could be easily collected. This is substantiated by the affidavit of W. E. Homes, Jr., referred to above, in which he stated:

> "There was a strong possibility Bolo Corporation would not have sufficient funds or other assets available to satisfy any arbitration award. Thus it was necessary to obtain some fund to secure any eventual arbitration award. The instant suit was commenced in order to obtain garnishment rights with the hope of obtaining some security to satisfy any eventual arbitration award." Supp. Abstract of Record at p. 6.

Unfortunately for Homes, it turned out that the rents had previously been assigned to other creditors. Disappointingly the garnishments were of no avail and it was at that point that the plaintiff retreated from its litigating position, preferring to present its grievance to a board of arbitrators rather than the court.

We hold that when this plaintiff sought redress through the courts, in lieu of the arbitration tribunal, and asked the court for exactly the same type of relief (i. e. damages), which an arbitrator is empowered to grant, it waived the right to thereafter arbitrate the controversy over the protest of the defendant. In addition to the authority cited above, see the discussion of the proposition in Schwartz v. Leibel, 249 Cal.App.2d 761, 57 Cal.Rptr. 831 (1967); Sussman v. Goldberg, 28 Misc.2d 1070, 210 N.Y.S.2d 912 (1960); and Cavac Compania Anonima Venezolana de Administracion y Comercio v. Board for Validation of German Bonds in the United States, 189 F.Supp. 205 (D.C.S.D.N.Y. 1960).

In light of our holding that the plaintiff should not have been permitted to arbitrate over the protest of Bolo, it is unnecessary

for us to rule on the additional issues presented which concern the validity of the arbitration award. The judgment of the Superior Court is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

STRUCKMEYER, V. C. J., and Mc-FARLAND, J., concur.