540 P.2d 185

**EFC DEVELOPMENT CORPORATION, an Arizona Corporation, Appellant,**

v.

**F. F. BAUGH PLUMBING & HEATING INC., an Arizona Corporation, Appellee.**

**No. I CA–CIV 2806.**

Court of Appeals of Arizona,
Division 1,
Department B.

Sept. 11, 1975.

Rehearing Denied Oct. 10, 1975.
Review Denied Nov. 18, 1975.

Gorodezky, Marron & Diamond by John B. Marron, Phoenix, for appellant.

Lewis & Roca by John P. Frank, Mary M. Schroeder, Peter A. Winkler, Phoenix, for appellee.

## OPINION

HAIRE, Chief Judge.

On this appeal we are presented with numerous issues relating to proceedings which led to the trial court's confirmation of an arbitration award. We will consider the questions raised by appellant and the arguments relating thereto in the order presented in appellant's opening brief, giving such facts as are pertinent to the question being discussed.

### 1.

MAY A PARTY TO A CONTRACT DEMAND THE ARBITRATION RIGHTS THEREUNDER WHEN THAT PARTY ITSELF HAS BREACHED, ABANDONED, OR REPUDIATED THE CONTRACT WITHOUT ITSELF FIRST ASKING FOR ARBITRATION OF ITS GRIEVANCES?

Unquestionably a party may lose his contractual right to arbitrate ". . . upon such grounds as exist at law or in equity for the revocation of any contract." A.R.S. § 12–1501. A discussion of this statutory provision and the possible loss of the right to arbitrate through abandonment, repudiation or waiver is set forth in *Bolo Corporation v. Homes & Son Construc-*

*tion Co.,* 105 Ariz. 343, 464 P.2d 788 (1970). However, appellant's argument concerning this question is not directed to any claimed conduct on appellee's part specifically indicating a breach, abandonment or repudiation of the *arbitration* provision of the contract. Rather, appellant argues that if appellee has breached any provision relating to performance of the contract without first asking for arbitration concerning the parties' rights and duties under that provision, such breach constitutes an implied abandonment of the right to arbitration.

■■■ Here, the pertinent arbitration provision applies to controversies "arising out of the construction of the structure . . . or regarding interpretation of the [two subcontracts involved.]" A controversy arose concerning the refusal of appellant to pay sums allegedly due appellee. After the passage of some time, appellee reduced its work force on the jobs, and when appellant demanded that appellee continue work with an increased work force, appellee requested arbitration concerning "the duties of the parties in the circumstances," and specifically offering to submit to arbitration the question of whether appellee had the duty to continue performance in view of the claimed large arrearage in pay. Appellant contends that appellee's action in reducing its work force prior to demanding arbitration, constituted an implied abandonment and repudiation of the arbitration right. We find nothing in the parties' agreement, the arbitration statutes, or case law which would justify this conclusion. We do not doubt that under most arbitration provisions (obviously depending upon the contractual language used), upon proper demand there can be arbitration proceedings concerning prospective problems similar to the declaratory judgment legal proceeding. However, the very purpose of arbitration provisions would be defeated and their effectiveness severely limited if a party were held to have abandoned his arbitration rights merely because his actions might be construed to constitute a breach of the contract prior to the time he seeks a clarification of those rights through arbitration. In effect, appellant would require a predetermination by the court of the parties' rights, i. e., whether or not one of them had actually breached the contract as a precondition to arbitration proceedings, notwithstanding the fact that the parties by their contract have established arbitration proceedings as the proper forum for the determination of such questions.

By its very nature the arbitration clause in the contract is distinct from other clauses. It is not to be considered as a clause in favor of one party or the other, the performance of which might be excused by the breach of other provisions of the contract. Rather, the arbitration clause constitutes the consent of the parties to the establishment of extra-legal machinery for the settlement of their disputes. Even if we assume that appellee's action in reducing its work force constituted a breach of its obligations under the contracts, we find no merit in appellant's contention that such breach constituted an abandonment or repudiation so as to render the arbitration provisions of the contract unavailable to the appellee.

2.

MAY A PARTY DEMAND ARBITRATION AND YET ADDITIONALLY AND SIMULTANEOUSLY ALSO PROCEED TO:

(a) Avail itself of remedies before administrative bodies?

(b) File mechanics' and materialmen's liens after arbitration has been had?

(c) Proceed with litigation that involves discovery and use of legal process to preclude payments of funds to its adversary from other parties?

Separate and apart from the argument raised in Question 1 relating to appellee's alleged breach in performance of the contract, appellant contends that appellee's

specific conduct as outlined in subsections (a)(b) and (c) of Question 2 resulted in a waiver of appellee's contractual arbitration rights. Subsection (a) concerns a claimed waiver allegedly resulting from the fact that after the trial court's initial order compelling arbitration, but before the actual commencement of the arbitration hearing, appellee filed a complaint against the appellant before the Registrar of Contractors. In support of this waiver contention, appellant cites *In re Aller's Petition*, 47 Cal.2d 189, 302 P.2d 294 (1956). In that case, a labor union initially refused to comply with a request for arbitration under the contract's arbitration provisions, but instead brought proceedings before the State Labor Commissioner seeking to collect dismissal pay for its members. In a later civil action wherein the labor union attempted to compel arbitration, the court held that the union had waived its right to arbitrate, and stated that the union's conduct in pursuing the proceedings before the State Labor Commissioner was some evidence that it did not intend to arbitrate.

The actions of the party seeking arbitration in *In re Aller's Petition, supra,* are readily distinguishable from appellee's actions here. Appellee never refused arbitration, but rather, from the inception, actively and aggressively pressed its attempts to bring the matter to arbitration. The basis of the finding of waiver of an arbitration provision is the showing of conduct inconsistent with utilization of the arbitration remedy—conduct showing an intent not to arbitrate. *Bolo Corporation, supra.* Inconsistency is usually found from such conduct as preventing arbitration, making arbitration impossible, proceeding at all times in disregard of the arbitration clause, expressly agreeing to waive arbitration, or unreasonable delay. *See* Annots., 117 A. L.R. 301 (1938), 161 A.L.R. 1426 (1946). In view of appellee's prior and subsequent conduct in continually pressing for arbitration, no waiver can be implied from the

fact that it filed a complaint with the State Registrar of Contractors, seeking the revocation of appellant's contractor's license.

In Question 2(b) appellant contends that appellee waived its arbitration rights by filing mechanics' and materialmen's liens after arbitration had been initiated. Again, we see nothing inconsistent with the actions taken by appellee to preserve its lien rights while at the same time pursuing its arbitration remedy. *Bolo Corporation, supra; Homestead Savings & Loan Association v. Superior Court,* 195 Cal.App.2d 697, 16 Cal.Rptr. 121 (1961). Here, appellee filed its liens on April 12, 1973, after the court had ordered arbitration. On October 5, 1973, after the arbitrators issued their award, the appellee filed its second amended complaint seeking to foreclose the lien. In this appeal we do not need to determine the extent of appellee's lien rights, if any, under the facts presented. That question is not before us. We recognize that a subcontractor in appellee's position might face difficult problems vis-a-vis the owner when attempting to foreclose a mechanic's and materialmen's lien based upon an award entered in arbitration proceedings where the owner was not a party, particularly in view of the fact that the amount of the subcontractor's lien is not necessarily governed by the amounts specified in the subcontractor's contract with the general contractor or by an amount which might represent the subcontractor's damages for breach of that contract.[1] *See* A.R.S. § 33–981; *Wahl v. Southwest Savings & Loan Association,* 106 Ariz. 381, 476 P.2d 836 (1970); *Parker v. Holmes,* 79 Ariz. 82, 284 P.2d 455 (1955). Nevertheless, in our opinion these problems merely go to the question of the appropriate procedure which, as against the owner, the subcontractor must utilize in enforcing his statutory lien. Here, appellee did not, prior to seeking arbitration, file its lien and commence legal action to foreclose the same, thereby invoking the

---

1. There is nothing in the record which would indicate that the owner of the properties here involved is contractually bound to abide by the results of these arbitration proceedings.

machinery of the legal forum to settle the controversies between the parties. Rather, appellee first sought arbitration, thereafter recorded its lien, and did not seek to amend its complaint so as to add a count for lien foreclosure until after the arbitration award had issued.[2] Such conduct cannot be interpreted as a waiver or abandonment of appellee's right to arbitration.

■ Appellant's arguments concerning Question 2(c) appear to rest upon the fact that appellee's complaint filed in the Superior Court sought not only to compel arbitration, but in addition sought injunctive relief and, as an alternative, declaratory judgment relief and damages for breach of contract. Appellant's reliance in this regard on *Bolo Corporation, supra,* and *Sussman v. Goldberg,* 28 Misc.2d 1070, 210 N. Y.S.2d 912 (1960) is misplaced. In both of those cases, the plaintiff first filed his action seeking to invoke the jurisdiction of the court to litigate the parties' disputes, and thereafter; sought to have those same disputes submitted to arbitration. Here, as we have previously indicated, the opposite was true. Appellee's complaint, as its primary purpose, sought to obtain the aid of the court in compelling the appellant to proceed with arbitration, an objective specifically authorized by A.R.S. § 12–1502. Appellee's request for an injunction was only in aid of arbitration and not inconsistent so as to indicate any waiver on appellee's part. Appellant further contends that appellee in some manner waived its right to arbitration by amending its complaint to assert new counts against appellant and an insurance company after arbitration on the two subcontracts previously discussed had been ordered. These new counts sought to recover certain funds based upon a different contract between the parties for the repair of fire damage, which contract did not contain an arbitration clause. We fail to see the relevance of this contention on the waiver issue. As we will discuss subsequently in this opinion, appellee had no right to have this issue submitted to arbitration, and therefore legally had no alternative but to proceed in court. The questions raised on this appeal do not involve the merits of appellee's rights on that independent contract, and we express no opinion relative thereto or concerning the propriety of bringing in the insurance company as an additional party in the proceedings below.

### 3.

### MAY A COURT ORDER ARBITRATION PURSUANT TO A.R.S. § 12–1502 WHERE THERE HAS NOT BEEN A REFUSAL TO ARBITRATE?

■ Appellant presents no argument concerning this question. Therefore, we treat it as abandoned. *Coggins v. Wright,* 22 Ariz.App. 217, 526 P.2d 741 (1974); *Mercantile National Life Insurance Co. v. Villalba,* 18 Ariz.App. 179, 501 P.2d 20 (1972); Rule 5(b), par. 9, Rules of the Supreme Court, 17A A.R.S. However, we do note that from the evidence and argument submitted by appellant at the time of the hearing on appellee's order to show cause why appellant should not be compelled to submit their disputes to arbitration, the trial court could well have concluded that appellant did refuse to arbitrate.

### 4.

### WAS THE TRIAL COURT'S ORDER REQUIRING THE PARTIES TO "PROCEED TO ARBITRATION ON ALL DISPUTES ARISING BETWEEN THEM" TOO BROAD IN SCOPE?

■ The two subcontracts, insofar as pertinent to the issues here raised, each provided that:

"Any controversy arising out of the construction of the structure referred to in this subcontract or regarding interpreta-

---

**2.** *See* A.R.S. § 33–998, requiring the bringing of the lien foreclosure action within six months after the recording of a lien.

tion of this subcontract . . . is subject to arbitration."

At the hearing on the order to show cause as to why the court should not order arbitration, the only disputes brought to the attention of the court were clearly within the scope of the above-quoted contractual provision. We find no indication in the record that the trial judge intended to compel arbitration on any disputes other than those brought to his attention at the initial hearing. Under these circumstances we find no justification for setting aside the order compelling arbitration, even though its terms were literally more inclusive than contemplated by the contract of the parties.

### 5.

### DID THE ARBITRATORS EXCEED THEIR POWERS BY ARBITRATING THE "FIRE-DAMAGE" DISPUTE?

■ In our discussion of Question 2(c) above, we referred to the fact that after arbitration had been ordered concerning the parties' disputes arising under the two subcontracts involved, the trial court allowed appellee to amend its complaint so as to assert new counts against appellant and an insurance company for recovery of certain "fire-damage" funds. At the hearing during which appellee sought to obtain the trial court's permission for the filing of the amended complaint, appellee's counsel expressly represented to the court that any rights which appellee had against appellant in this connection arose from an entirely separate and independent contract, which did not contain an arbitration clause, and that appellee was not asking that this issue be submitted to arbitration. However, notwithstanding this representation, after the trial court entered its order permitting the filing of the amended complaint, appellee's counsel successfully urged before the arbitrators that the scope of the arbitration be enlarged to include the fire damage recovery issue.

It is elementary that the boundaries of the arbitrators' powers are defined by the agreement of the parties. *Smitty's Super-Valu, Inc. v. Pasqualetti*, 22 Ariz.App. 178, 525 P.2d 309 (1974). Here, by counsel's own representation made in open court there was no agreement to submit the parties' disputes concerning the fire damage repair contract to arbitration. Appellee cannot find support in the broad language of the trial court's order compelling arbitration "on all disputes arising between" the parties, since, as we have previously pointed out, this particular dispute could not have been within the contemplation of the trial judge at the time he issued his order compelling arbitration. Further, we note that appellant timely objected to the inclusion of this broad language in the order, and, in addition, as he was entitled to do under the provisions of A.R.S. § 12–1512 A(3) opposed confirmation of the arbitrators' award on that basis. If for some reason not brought to our attention by appellee, we are in error in our conclusion that the fire damage dispute did not come under the parties' contractual agreement for arbitration, we would still conclude that appellee waived its right to have this issue arbitrated by filing its first amended complaint in which appellee brought this matter of fire damage to the court for adjudication prior to any attempt to bring this particular issue before the arbitrators. *See Bolo Corporation, supra.*

### 6.

### QUESTIONS CONCERNING CONFIRMATION PROCEDURE

Appellant urges that the confirmation of the award must be set aside because of the failure of appellee to follow the statutory procedures in seeking confirmation of the arbitrators' award. A.R.S. § 12–1511 provides as follows:

"A party seeking confirmation of an award shall file and serve an application therefor in the same manner in which complaints are filed and served in civil actions. Upon the expiration of twenty days from service of the application, which shall be made upon the party against whom the award has been made,

the court shall enter judgment upon the award unless opposition is made in accordance with § 12–1512."

Appellee did not follow the procedure set forth in § 12–1511, but instead, on October 16, 1973, filed with the court a "motion for entry of judgment in accordance with award" together with a proposed form of judgment. This motion erroneously referred to A.R.S. § 12–1514 rather than § 12–1511, was not served upon appellant "in the same manner in which complaints are . . . served," and requested that judgment be entered within five days after lodging rather than upon the expiration of twenty days after service as provided in § 12–1511. We note that in its order compelling arbitration, the trial court had expressly retained jurisdiction to enforce any ultimate arbitration award, and appellee's confirmation motion was filed and served as a motion in that proceeding. Under these circumstances, we do not believe that § 12–1511 was intended to require that an application for confirmation be served in the same manner in which complaints are served in civil actions. Rather, we interpret the first sentence of § 12–1511 as applying only to those situations in which the parties have not been previously subjected to the jurisdiction of the court in connection with the arbitration proceedings. Here the trial court properly retained jurisdiction, and, under § 12–1515, the matter could appropriately be urged by motion served in that pending action. However, pursuant to § 12–1511 the trial court was required to wait twenty days before entering any judgment on the award in order to give appellant the opportunity to oppose entry of that award. The case here on appeal presents no problem in this regard, since considerably more than twenty days expired before the court entered its final order confirming the award, and in fact the appellant filed its opposition thereto on October 19, 1973, within three days after appellee had served its motion seeking confirmation. Therefore, although technically erroneous in that it referred to A.R.S. § 12–1514 and requested the entry of judgment within five days, we can perceive no prejudice resulting to appellant from the procedure here followed by appellee. Although appellant argues to the contrary, we have thoroughly reviewed the record and find that appellant was afforded ample opportunity to present his arguments to the court in opposition to confirmation. We further note that appellant did not at any time indicate to the court that he desired an opportunity to present evidence in regard to his opposition to the award.

One final procedural argument is urged by appellant. On October 30, 1973, which was within twenty days after delivery of the award to him,[3] appellant, acting pursuant to the provisions of A.R.S. § 12–1509, made an application to the arbitrators to "modify, correct and clarify" the award. A.R.S. § 12–1509 provides:

"On application of a party or, if an application to the court is pending under §§ 12–1511, 12–1512, or 12–1513, on submission to the arbitrators by the court under such conditions as the court may order, the arbitrators may modify or correct the award upon the grounds stated in paragraphs 1 and 3 of subsection A of § 12–1513, or for the purpose of clarifying the award. The application shall be made within twenty days after delivery of the award to the applicant. Written notice thereof shall be given forthwith to the opposing party, stating he must serve his objections thereto, if any, within ten days from the notice. The award so modified or corrected is subject to the provisions of §§ 12–1511, 12–1512 and 12–1513."

The arbitrators declined to consider this application, stating:

". . . we have decided that pursuant to § 12–1509, A.R.S., and in view of the

3. Although the award was dated October 1, 1973, apparently it was not delivered until on or about October 13, 1973.

motion having been made in the Superior Court to enter judgment on the award, the panel is without further jurisdiction to hear this matter without a submission by the court."

We agree. It is clear from the express provisions of § 12–1509 that if an application for confirmation is pending before the court, it would be error for the arbitrators to take any action on a § 12–1509 application for modification filed thereafter, except ". . . on submission to the arbitrators by the court under such conditions as the court may order."

In conclusion, we hold that except as to that portion of the damages award which related to the fire damage dispute, the trial court's judgment confirming the arbitrators' award must be affirmed. The matter is remanded to the trial court with instructions to modify the award so as to delete that portion of the damages which relate to the fire damages dispute, and to confirm the award as so modified.

JACOBSON, P. J., and EUBANK, J., concur.