892 P.2d 1365

George **MEINEKE** and Elizabeth Meineke, husband and wife, Plaintiffs–Appellees,

v.

**TWIN CITY FIRE INSURANCE COMPANY, an Indiana corporation, Defendant–Appellant.**

No. 1 CA–CV 92–0134.

Court of Appeals of Arizona, Division 1, Department A.

Sept. 20, 1994.

As Corrected Oct. 24, 1994.

Review Denied April 25, 1995.

Law Offices of James B. Rolle, III by James B. Rolle, III, Phoenix, and Raymond A. Hanna, P.C. by Raymond A. Hanna, Prescott, for plaintiffs-appellees.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.A. by David L. Kurtz, Phoenix, for defendant-appellant.

## OPINION

GRANT, Presiding Judge.

In this appeal, Twin City Fire Insurance Company ("Twin City") challenges the trial court's denial of its motion to compel an appraisal to determine the value of appellees' (Meinekes) fire loss claim. We conclude that

Twin City waived the insurance policy appraisal provision and its demand for an appraisal was unreasonably delayed under the circumstances. Accordingly, we affirm the trial court.

## FACTS AND PROCEDURAL HISTORY

On December 1, 1989, a fire destroyed the Prescott home of George and Elizabeth Meineke. The house was built over a period of four decades by George Meineke himself. After the house was built in 1956, they made a number of additions to the dwelling, and at the time of the fire, the house contained more than 6,200 square feet with 24 rooms and 6 baths.

The Meinekes had an insurance policy issued by Twin City that contained limits of liability of $132,000 for the dwelling, $13,200 for other structures, $92,400 for personal property, and $26,400 for loss of use. However, riders to the policy provided that the limits of liability were increased to equal the current replacement costs of the dwelling and personal property.

A few days after the fire, Twin City's local adjuster inspected the premises and gave a $5,000 advance to the Meinekes. On December 29, 1989, the Meinekes met with a contractor who had been hired by Twin City to estimate the replacement value of the home. In February 1990, the Meinekes gave the contractor scale drawings and an index of the structural components of the house. Based on that information, the contractor estimated that the house could be rebuilt for $342,-922.78. The same contractor subsequently revised his estimates, arriving at a figure of $446,146.98 on the second estimate, $459,-965.10 on the third estimate, and $368,994.65 on the fourth estimate. The fourth estimate figure, according to the contractor, represented the actual cost to the Meinekes in constructing the house and not the actual present cost of replacing the home. The contractor told Twin City he could not rebuild the home for $368,994.65 but believed he could rebuild it for the amount of his third estimate—$459,965.10.

In April 1990, Twin City advanced another $5,000 to the Meinekes. In July, 1990, the Meinekes offered to settle the structural loss for $687,085.30, which they calculated by using a $110 per square foot cost for the 6,246.23 square feet of the house. On July 27, 1990, Twin City paid to the Meinekes $132,000 on their structural claim and $92,-400 on their personal property loss. In September 1990, Twin City paid to the Meinekes $4,842.22 for architectural plans and blueprints.

In October 1990, the Meinekes offered to settle their structural damage claim for $824,340. They also requested $26,400 for loss of use and $13,950 for damage to their covered walkway and trees and shrubs. Based on the contractor's fourth estimate ($368,994.65) and subtracting depreciation and the amount already paid, Twin City paid to the Meinekes an additional $192,370.32 for replacement of the house. It also paid an additional $34,713.86 for loss of personal property. In its October 10, 1990, letter setting forth these amounts Twin City did not mention the appraisal procedure.

Following further negotiations, Twin City wrote to the Meinekes on November 6, 1990, noting that the Meinekes had represented that they were seeking another estimate from the contractor as well as estimates from two other builders. Twin City stated that if those estimates did not clarify the discrepancies in value for replacement of the house, Twin City would invoke the appraisal provision of the policy. This was Twin City's first mention of the clause. That clause provided:

> If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the residence premises is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision

agreed to by any two will set the amount of loss.

Loss was payable 60 days after Twin City received the insured's proof of loss *and* it either reached agreement with the insured, a final judgment was entered, or an appraisal award was filed with Twin City. Under the policy, the insured could not sue Twin City unless the policy provisions had been complied with and the action was started within one year after the date of loss.

In a November 27, 1990, letter from the Meinekes to Twin City, the Meinekes enclosed a builder's estimate that totaled $983,-880. They also noted that Twin City could not invoke the appraisal clause until the parties had reached differing values for replacement of the house and that Twin City had not yet stated what it believed the replacement value was, although the Meinekes had made two offers of settlement and provided several contractors' estimates. Previously on September 19, 1990, the Meinekes' attorney had written to Twin City's attorney asking why it had not tendered a sum equal to the value of the insurance company's position. In the letter of November 27, 1990, the Meinekes' attorney wrote to Twin City's counsel saying, "Therefore, until your client can determine what it thinks the property is worth, there is no sense in invoking the appraisal clause. As I have requested above, please inform me as to what value your client places on the dwelling."

On November 28, 1990, the Meinekes filed a complaint against Twin City in order to protect their rights under the one year limitation clause. However, they did not serve the complaint nor advise Twin City that they had filed an action against it. Negotiations continued, and on January 23, 1991, Twin City paid to the Meinekes $6,200 for damage to their trees and shrubs. In February 1991, Twin City paid $3,128 for damage to the covered walkway. By letter dated January 29, 1991, the Meinekes advised Twin City that the contractor had not done an updated bid and another builder decided not to submit any bid, so they were relying on the $938,880 bid as the replacement value of the house.

On March 7, 1991, the Meinekes filed an amended complaint which they served on Twin City. On April 19, 1991, Twin City filed a notice of removal of the action to federal district court and its answer. Twin City filed an answer asserting that the complaint was untimely filed because the insurance policy required the parties to arbitrate and that by filing the answer it did not waive reliance on those policy provisions. Twin City subsequently withdrew its notice of removal, and on May 31, 1991, the federal district court entered an order remanding the matter to the superior court.

In the meantime, by letter dated April 29, 1991, Twin City demanded compliance with the appraisal procedure of the policy and named its appraiser. The Meinekes refused to comply with Twin City's demand to submit the valuation dispute to appraisers on the ground that the demand was untimely. On June 10, 1991, Twin City filed a motion to stay the litigation and for an order compelling submission of the Meinekes' claim to arbitration. Twin City noted that it had already paid the Meinekes more than $470,-000 on their claim, and it sought compliance with the appraisal provision to determine the value of the claim.

In response, the Meinekes argued that the appraisal clause was optional, not mandatory, and that Twin City had waived its right to demand appraisal because it had waited more than a year after the loss and more than six months after it was clear a dispute in valuation existed to make its demand. The Meinekes also asserted that Twin City had repudiated the appraisal option by filing a notice of removal to federal court and its answer in the suit.

■ The trial court denied the motion to compel arbitration without comment. Twin City filed a timely notice of appeal from the order denying its motion. We have jurisdiction pursuant to Ariz.Rev.Stat.Ann. ("A.R.S.") section 12–2101.01(A)(1) (1994). *See also U.S. Insulation, Inc. v. Hilro Constr. Co.,* 146 Ariz. 250, 253, 705 P.2d 490, 493 (App.1985) (denial of motion to compel arbitration is substantively appealable).

## STANDARD OF REVIEW

█ The parties are in dispute as to the standard of review applicable to the issue of this appeal.

Twin City argues that because the facts are undisputed and the question is one of law, our standard of review is *de novo*. Twin City cites *U.S. Insulation*, 146 Ariz. at 256, 705 P.2d at 496, to support its position. The Meinekes claim that because the facts are disputed we must accept as fact the evidence that supports the trial court's ruling therefrom in a light most favorable to sustaining the trial court's decision. *Davis v. Tucson Ariz. Boys Choir Soc'y*, 137 Ariz. 228, 229, 669 P.2d 1005, 1006 (App.1983).

Because we view the issue as: whether the facts regarding Twin City's conduct satisfy the standard for waiver of the appraisal clause, we consider the trial court's determination that Twin City waived the appraisal provision to be binding on this court unless it is clearly erroneous. *Goglia v. Bodnar*, 156 Ariz. 12, 19, 749 P.2d 921, 928 (App.1987).

## DISCUSSION

On appeal, Twin City first argues that the appraisal clause in the insurance policy is valid and applicable to the parties' dispute. The Meinekes have not argued that the provision is invalid or inapplicable. Therefore, we do not reach this issue, and we thus presume that the appraisal clause is a valid and applicable procedure to determine the amount of the Meinekes' fire loss if it has not been waived.

Twin City next argues that it did not repudiate or waive its right under the policy to demand an appraisal to determine the amount of the Meinekes' fire loss. Twin City maintains that all of its actions were consistent with its intent to invoke the appraisal clause, it never acted in a manner inconsistent with that intent, and there is no evidence that it intended to waive the appraisal clause by its conduct, including the filing of its answer to the Meinekes' complaint. Twin City further argues that neither the 60–day loss payment provision nor the policy's one year limitation on filing a lawsuit control the

time during which Twin City was entitled to implement the appraisal procedure.

In response, the Meinekes argue that Twin City's April 29, 1991, appraisal demand was untimely and thus Twin City waived its right to appraisal. In the Meinekes' view, Twin City repudiated the appraisal option by filing a notice of removal to federal court, an answer on the merits in the lawsuit, and a demand for jury trial without earlier or simultaneously filing a motion to compel an appraisal. The Meinekes also maintain that the demand for appraisal was untimely because it was not filed within a year of the fire loss, even though the policy required the insureds to file suit within one year.

█ No Arizona case has previously considered the issue of repudiation and waiver of an appraisal clause. Despite some differences between arbitration and appraisal, appraisal is analogous to arbitration. *Aetna Casualty & Sur. Co. v. Insurance Comm'r*, 293 Md. 409, 445 A.2d 14, 20 (1982); *see Hirt v. Hervey*, 118 Ariz. 543, 545, 578 P.2d 624, 626 (App.1978) (both appraisals and arbitrations provide contractual methods for settling disputes in a less complicated and expensive manner than through court adjudication). Therefore, we apply principles of arbitration law to this dispute regarding an insurance policy appraisal clause. *See Hanson v. Commercial Union Ins. Co.*, 150 Ariz. 283, 285, 723 P.2d 101, 103 (App.1986) (in view of similarity between arbitration and appraisal enforcement proceedings, court applied arbitration standard of review to review of appraisal panel award); *Hirt*, 118 Ariz. at 545, 578 P.2d at 626 (decisions of appraisers entitled to same degree of finality accorded decisions of arbitrators).

This court has recently considered the issue of repudiation and waiver of an arbitration clause. *City of Cottonwood v. James L. Fann Contracting Inc.*, 179 Ariz. 185, 877 P.2d 284 (App.1994). We stated: "The issue of untimeliness is complicated. An untimely demand could constitute repudiation/waiver of the arbitration clause. . . ." *Id.* at 189, 877 P.2d at 288.

█ Arbitration is "an expeditious and inexpensive method of dispute resolution."

*Rancho Pescado, Inc. v. Northwestern Mut. Life Ins. Co.,* 140 Ariz. 174, 182–83, 680 P.2d 1235, 1243–44 (App.1984). Public policy favors arbitration, *see* A.R.S. section 12–1501; thus, waiver of an appraisal clause, like waiver of an arbitration agreement, is generally not favored, and the facts of each case must be considered in light of the strong policy approving of arbitration. *U.S. Insulation,* 146 Ariz. at 258, 705 P.2d at 498; *Rancho Pescado,* 140 Ariz. at 181, 680 P.2d at 1242. Once a party invokes the appraisal procedure, the party seeking to prove waiver has the burden of proof. *See Fisher v. A.G. Becker Paribas Inc.,* 791 F.2d 691, 694 (9th Cir.1986); *Rancho Pescado,* 140 Ariz. at 181, 680 P.2d at 1242; *Fisher,* 791 F.2d at 694.

■ It is well-established, however, that a party to a contract may waive its right to enforce an arbitration agreement by its conduct. *U.S. Insulation,* 146 Ariz. at 254, 705 P.2d at 494; *Bolo Corp. v. Homes & Son Constr. Co.,* 105 Ariz. 343, 345, 464 P.2d 788, 790 (1970). Waiver occurs when a party relinquishes a known right or exhibits conduct that clearly warrants inference of an intentional relinquishment. *American Continental Life Ins. Co. v. Ranier Constr. Co.,* 125 Ariz. 53, 55, 607 P.2d 372, 374 (1980); *Goglia,* 156 Ariz. at 19, 749 P.2d at 928. This court, in *City of Cottonwood v. James L. Fann Contracting,* held:

> A court may consider an untimely demand for arbitration as a factor in its determination of repudiation. Unless the repudiation is clear, however, the court should not infer it. An allegation of repudiation based on unreasonable delay must include clear evidence of 1) prejudice suffered by the other party and 2) a demand for arbitration so egregiously untimely and inconsistent with an intent to assert the right to arbitrate that an intentional relinquishment can be inferred. Although a case may not present evidence sufficient to establish repudiation in this manner to the court, the trier of fact may still decide that a timely demand is a procedural condition to arbitration, and that a party's demand was untimely, and therefore conclude that that party forfeited its right to arbitrate.

179 Ariz. at 192–93, 877 P.2d at 291–292 (citations and footnote omitted).

An arbitration provision is waived by conduct inconsistent with the use of the arbitration remedy; in other words, conduct that shows an intent not to arbitrate. *EFC Dev. Corp. v. F.F. Baugh Plumbing & Heating, Inc.,* 24 Ariz.App. 566, 569, 540 P.2d 185, 188 (1975). Such conduct includes "preventing arbitration, making arbitration impossible, proceeding at all times in disregard of the arbitration clause, expressly agreeing to waive arbitration, or unreasonable delay." *Id.*

■ In applying these standards to the question of whether Twin City waived its right to demand an appraisal, we find facts in the record that support the trial court's implied finding that it did.

■ The Meinekes argue that by filing the notice of removal to federal court and its answer, Twin City exhibited intent to litigate the Meinekes' claim rather than to rely on the appraisal provision. In *Bolo,* which the Meinekes cite to support their argument, the contractor requested arbitration of its dispute with Bolo, but Bolo refused to arbitrate. The contractor filed a breach of contract action against Bolo in which it sought a money judgment. About six months after filing the lawsuit, the contractor sought leave to amend the complaint and for an order to compel arbitration. In reversing the trial court's order directing that arbitration be conducted, the appeals court held that when the contractor sought its remedy through the courts rather than by arbitration and asked the court for the same type of relief an arbitrator was empowered to grant, it waived the right to arbitrate the dispute over Bolo's objection. *Bolo,* 105 Ariz. at 347, 464 P.2d at 792. In its answer, Twin City asserted that the complaint was premature because the policy required the parties to arbitrate and that the filing of the answer "should not be deemed a waiver of defendant's opportunity to rely upon these policy provisions." Twin City overstated the effect of the appraisal clause; the clause was not a compulsory prerequisite to the filing of an action by either party. Twin City's assertion also ignores the one-year limitation clause of the policy.

Nevertheless, Twin City also specifically stated in its answer that by the filing of its answer it did not waive its right to rely on the appraisal provision. However, Twin City waited ten days after filing its answer in federal court to make its first demand for appraisal on the Meinekes on April 29, 1991. It was not until June 10, 1991, that Twin City filed the motion to compel.

■ The *Bolo* court quoted with approval the statement in *Anderson v. Twin City Rapid Transit Co.*, 250 Minn. 167, 84 N.W.2d 593 (1957), that the plaintiffs in *Anderson* repudiated the arbitration clause by commencing the lawsuit and the defendants joined in the repudiation by answering on the merits without a demand for arbitration or a motion to stay the suit. In our view, a party's filing of a lawsuit without invoking arbitration or appraisal would nearly always indicate a clear repudiation of the right to arbitrate or have an appraisal, and the filing of an answer normally has the same effect. Twin City, although stating in its answer that it reserved the right to demand arbitration or appraisal, did not request appraisal simultaneously with filing its answer. Under these circumstances, we must agree with the trial court's determination that filing the answer indicated a repudiation of the appraisal clause by Twin City. To hold otherwise would leave the insured in limbo as to which procedure would prevail for settlement of their claim. To allow parties to proceed on the dual pathways of arbitration (or appraisal) and litigation nullifies the time and expense-saving benefits of arbitration. Allowing parallel tracks also wastes over-burdened judicial resources. Although arbitration is favored, the reasons for favoring it are to save the parties both time and expense and to spare judicial resources. Allowing dual procedures negates the reasons behind favoring arbitration.

The Meinekes also assert that Twin City waived the provision because its demand for appraisal was untimely or, in the words of the *EFC* court, was unreasonably delayed. Although the appraisal provision does not state a time limit for requesting an appraisal, the Meinekes argue that the appraisal demand must be made within the one year period during which a lawsuit must be filed or within 60 days from submission of the proof of loss. This is a question of first impression in Arizona.

■ Courts in other jurisdictions that have considered this question have concluded that where the policy does not provide a time for requesting an appraisal, the request must be made within a reasonable time. *Kester v. State Farm Fire & Cas. Co.*, 726 F.Supp. 1015, 1019 (E.D.Pa.1989); *Hanby v. Maryland Casualty Co.*, 265 A.2d 28, 30 (Del. 1970); *Monroe Guar. Ins. Co. v. Backstage, Inc.*, 537 N.E.2d 528, 529 (Ind.Ct.App.1989); *School Dist. No. 1 v. Globe & Republic Ins. Co.*, 146 Mont. 208, 404 P.2d 889, 893 (1965). The timeliness of a demand for an appraisal depends upon the circumstances as they existed at the time the demand was made. *Kester*, 726 F.Supp. at 1019; *Keesling v. Western Fire Ins. Co.*, 10 Wash.App. 841, 520 P.2d 622, 626 (1974). Among the circumstances courts consider are the timing between the breakdown of good faith negotiations concerning the amount of the loss suffered by the insured and the appraisal demand, and whether any prejudice to the other party resulted from the delay in demanding an appraisal. *Kester*, 726 F.Supp. at 1019–20; *Monroe*, 537 N.E.2d at 529; *School Dist. No. 1*, 404 P.2d at 893; *Keesling*, 520 P.2d at 628.

■ In analyzing the Meinekes' arguments, we first reject their contention that the 60–day payment period following proof of loss governs the timeliness of the appraisal demand. The applicable policy provision is that loss was payable 60 days after Twin City received the insured's proof of loss *and* either reached agreement with the insured, a final judgment was entered, or an appraisal award was filed. This provision puts no limitation on when an appraisal demand is to be made. Its only relevance to appraisal is that the loss must be paid within 60 days after an appraisal award is filed if that means of settling the amount of loss is used.

■ We agree, however, with the Meinekes' argument that appraisal is waived if not requested within a year after the loss. Although all of the insurance policies in-

volved in the appraisal cases cited herein had a one-year limitation on filing suit, only the *School District* court believed that an appraisal demand must be made within the one year period. Because the appraisal demand in *School District* had been made before the expiration of one year, the court did not have to decide the question. However, that court assumed in *dicta* that "the policies necessarily contemplate a demand within a year after loss is incurred by requiring that a suit upon the policy be brought within that period" and that the one-year period of limitation upon suits "serves to reveal the parties' intent concerning the period within which appraisal may be requested." 404 P.2d at 893. We agree with this reasoning.

The failure of one party to demand arbitration within one year would prejudice the other party's right to file a timely lawsuit. Whether delay in demanding arbitration results in prejudice to the other party is a major concern in determining waiver. If we held that a timely appraisal demand could be made after one year in the circumstances of this case we would encourage insurance companies to lure or lull insureds past the timely filing date for a lawsuit whereupon the insured would be forced to rely upon the appraisal procedure for redress when the policy clearly indicates appraisal is voluntary.

In otherwise considering whether the demand for an appraisal was unreasonably delayed, we have examined the lapse of time between the breakdown in negotiations and the demand for an appraisal. By letter dated January 29, 1991, the Meinekes advised Twin City that they were relying on a $938,880 bid as the replacement value of their house. Twin City then knew that the parties were far apart on their values for the loss although it had not submitted its figure to the Meinekes. The record indicates, however, that the parties continued to negotiate the loss until at least late February. The last letter in the record is dated February 25, 1991, and it indicates that Twin City was trying to arrange a meeting between the Meinekes and a contractor and was proposing to take the Meinekes' sworn statements on March 6th or 8th. Thus, Twin City did not demand an appraisal until about two months from the time that negotiations apparently halted or at least slowed considerably.

In addition, Twin City waited four months from the denial of its motion to compel an appraisal to lodge a formal judgment for the trial court's signature. We believe this is further evidence of Twin City's waiver of the appraisal procedure. *Rancho Pescado*, 140 Ariz. at 182–83, 680 P.2d at 1243–44.

In summary, we hold that the trial court's refusal to compel appraisal was not clearly erroneous. Twin City by its conduct clearly repudiated the appraisal provision and its demand was unreasonably delayed under the circumstances. Twin City should have demanded appraisal earlier than it did. Under these circumstances, Twin City waived its right to demand an appraisal by unreasonably delaying the demand and forcing the Meinekes to file suit at the last possible moment to preserve their claim. We thus affirm the denial of Twin City's motion to compel appraisal and remand for further proceedings in litigation.

The Meinekes request an award of its attorneys' fees incurred in this appeal pursuant to A.R.S. section 12–341.01(A). We grant their request in an amount to be determined upon compliance with Rule 21(c), Arizona Rules of Civil Appellate Procedure.

Affirmed; remanded for further proceedings.

EHRLICH, J., concurs.

VOSS, Judge, dissenting.

The majority opinion holds that Twin City waived its right to an appraisal through its conduct. To support its opinion, the majority raises two arguments. First, they contend that Twin City waived its right to demand an appraisal by filing an answer on the merits and a notice of removal to federal court. Second, the majority claims that Twin City waived its right to an appraisal because its demand was unduly delayed. I disagree with both contentions.

A. *Twin City Did Not Waive Its Right to an Appraisal by Its Actions.*

Twin City filed its answer on the merits and a notice of removal to the federal court on April 19, 1991. The majority interprets that by these acts, Twin City exhibited an intent to litigate rather than to rely upon the appraisal provision.

The majority cites *Bolo,* 105 Ariz. 343, 464 P.2d 788, as support for its argument; however, this case is easily distinguished from *Bolo.* In *Bolo,* the party demanding an appraisal was the party that filed the lawsuit, whereas here, the opposite is true. Twin City did not elect a remedy—it merely answered the complaint. *See Hanby,* 265 A.2d at 31 (election of insured to file suit could not deprive insurer of its right to appraisal); *Keesling,* 520 P.2d at 627. *Bolo* does not answer the question of whether an answering defendant waives the right to an appraisal by participating in litigation because that issue was not before the court. Although a party's filing of a lawsuit rather than invoking arbitration or appraisal would generally indicate a waiver of the right to have an appraisal, the filing of an answer, especially one that expressly reserves the right to demand an appraisal, does not indicate such a waiver. *ITT World Communications, Inc. v. Communications Workers of America, AFL CIO,* 422 F.2d 77 (2nd Cir.1970) (union did not waive its right to arbitrate by filing answer or by four-month delay in seeking arbitration); *Short v. National Sport Fashions,* 264 A.D. 284, 35 N.Y.S.2d 169 (1942) (defendant's failure to assert right to arbitration in stipulation to extend time to answer or in his first answer, did not constitute waiver of that right).

The majority also labels as a deficiency Twin City's failure to request an appraisal simultaneously with the filing of its answer. Although within its answer Twin City referenced its belief that it was entitled to an appraisal pursuant to the policy provision, it was not until ten days later that it formally demanded an appraisal. Twin City made it clear as early as November 1990 that it would insist on an appraisal in the event an agreement could not be reached. This intention was repeated in its answer and in its

subsequent pleadings seeking to stay litigation and to compel an appraisal. The ten-day gap before Twin City formally requested an appraisal is an inadequate indication of a waiver. *See ITT World,* 422 F.2d 77.

B. *Twin City Did Not Waive Its Right to an Appraisal by Unduly Delaying Its Demand.*

Although the appraisal provision does not state a time limit, the majority contends that the appraisal demand must be made within the one-year period during which a lawsuit must be filed against the insurer. The applicable provisions are as follows:

> **Appraisal.** If you and we fail to agree on the amount of loss, either party may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within twenty days after receiving a written request from the other.

> **Suit against us.** No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss.

The one-year limitation as specified by the plain language of the policy only applies to claims asserted against the insurer. The word "us" is a defined term in the policy. It refers to the company providing the insurance. Furthermore, the paragraph itself has no application to claims for an appraisal.

The majority cites *School District,* 404 P.2d 889, as support for their conclusion that the language of this policy requires an appraisal to be brought within one year of the date of loss. A comparison of the language of the policy in *School District* with the policy in this case illustrates its inapplicability. The provision in the policy at issue states that there cannot be a suit against the insurance company unless it commences within one year after the date of the loss. The language in *School District* states:

> No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all of the requirements of this policy shall have been complied with and unless commenced within twelve months after the inception of the loss.

404 P.2d at 891. The language in *School District* applies to both the insured and the insurance company/insurer. Conversely, the language in the policy before us precludes only claims *against the insurance company*. Furthermore, because the request for an appraisal was made within one year in *School District*, the conclusion that the demand needs to be within one year after the loss is dictum. Dictum is not binding on this court.

We should not presume that the one-year limitation on filing an action also limits the time in which a party may demand an appraisal. Public policy favors arbitration/appraisal, *see* A.R.S. section 12–1501; therefore, waiver of an appraisal clause, like waiver of an arbitration agreement, is generally not favored. The facts of each case must be considered in light of the strong policy approving appraisal. *U.S. Insulation*, 146 Ariz. at 258, 705 P.2d at 498; *Rancho Pescado*, 140 Ariz. at 181, 680 P.2d at 1242. Once a party invokes the appraisal procedure, the party seeking to prove waiver has a heavy burden of proof. *See Rancho Pescado*, 140 Ariz. at 181, 680 P.2d at 1242; *Fisher*, 791 F.2d at 694. There is no indication that the parties believed a one-year limit to demand an appraisal was part of their policy. Therefore, without a policy provision so providing, we should not interpret the limitations clause as applying to a demand for an appraisal.

The better practice is employed by other jurisdictions that have considered this question. They require the demand to be within a *reasonable time*. *Kester*, 726 F.Supp. 1015; *Hanby*, 265 A.2d at 30 (where policy did not state time within which demand was to be made, an appraisal must be requested within reasonable time); *Monroe Guar. Ins. Co.*, 537 N.E.2d at 529 (demand for an appraisal must be made within reasonable time under circumstances of case or right to demand an appraisal is waived). In *Kester* the policy at issue made no provision for a time when an appraisal must be requested, but it contained an identical "suit against us" paragraph as exists in the case before this court. The *Kester* court found that there was no provision in the policy which indicated that an appraisal must be sought within a specific time, and therefore concluded that it must be requested within a reasonable time period. *Kester*, 726 F.Supp. at 1019.

In considering the time limits of a demand, the court should consider the circumstances that existed at the time the demand was made and specifically look to prejudice and a breakdown of good faith negotiations as determining factors. *Id.* at 1019. Here, Meinekes met with a home builder to discuss estimates for replacing their residence. Based on changing information from the Meinekes, four separate bids were prepared by the contractor in the approximate amounts of $342,922.00, $466,156.00, $459,965.00, and $368,994.00. Each of these estimates was far in excess of the face amount of the insurance policy which provided $132,000.00 in coverage for the structure.

Meinekes were dissatisfied with the estimates; therefore, they submitted different values to Twin City. The first claim was made for $687,085.30. A second claim was made for $824,340.00. The third claim was made for $983,880.00 and was submitted one day before Meinekes' filed their complaint. The complaint was never served and, during the course of negotiations that followed, Twin City operated under the presumption that good faith negotiations were continuing.

During these negotiations, Twin City paid Meinekes in excess of $470,000.00 in advance payments on their loss. A review of the chronology of these negotiations demonstrates that Meinekes' claims escalated drastically since the loss occurred in December 1989. Much of the delay was caused by changing information provided by Meinekes. Throughout the year following the fire, Twin City engaged in good faith negotiations; however, much of the time was spent waiting for Meinekes to submit their value for the structure. The majority disregarded these delays caused by the Meinekes and concentrated on a one-year time limit regardless of the Meinekes' actions.

The majority also examined the lapse of time between the breakdown in negotiations and the demand for an appraisal. It determined that Twin City's demand two months after negotiations ceased was adequate evidence that it waived its right to an appraisal.

There is no reason to conclude that Twin City intended to waive this right. A time limit for demanding an appraisal is not specified in the policy. Twin City was operating under the assumption that good faith negotiations were continuing up until service of the amended complaint on March 7, 1991. Within a few weeks, Twin City filed its answer, referencing its belief that it was entitled to an appraisal pursuant to the policy provisions. Then, on April 29, 1991, Twin City formally demanded an appraisal. The brief break in good faith negotiations and the lack of prejudice compel the conclusion that Twin City should be entitled to invoke the appraisal provision of the policy in accord with Arizona's strong public policy favoring appraisal.

For the foregoing reasons I would reverse the denial of Twin City's motion to compel the appraisal and remand for compliance with the policy's appraisal procedure and for further proceedings.