H. G. PUGH & Co. *v.* AHRENS.

Opinion delivered November 5, 1928.

*Walter M. Purvis,* for appellant.

*Fred A. Isgrig* and *Philip McNemer,* for appellee.

SMITH, J. Appellee sued the appellant, a corporation, of which H. G. Pugh is president, for the premiums due on two policies of insurance on the life of its president.

In support of his cause of action appellee testified that he wrote two policies of insurance on the life of H. G. Pugh, payable to the company of which Pugh was president, for $5,000 each, with the understanding that appellee would pay the insurance company the premiums and would accept from the appellant goods, wares and merchandise in which appellant dealt, in payment for the premuims, and that, pursuant to this arrangement, the policies were issued and delivered to appellant and retained by it for nine months, when appellant returned the policies to the insurance company and

caused them to be canceled; that, upon issuance of the policies, the premiums therefor were charged to appellee, and he became responsible therefor to the company, and that he later made a settlement of this and all other accounts due by him to the company by executing to it a note for the net balance due by him, the same to be repaid out of annual renewals in which he had acquired an interest through his agency as district agent of the company issuing the policies.

But, as the trial court directed a verdict in appellee's favor, we must give to the testimony offered in appellant's behalf its highest probative value, and must assume that the jury would have accepted that testimony as true. As thus viewed, we summarize the testimony offered in appellant's behalf as stated in its brief. Mr. Pugh testified that he gave appellee an application for a policy which was to be issued on his life in favor of the appellant company. The premiums thereon were to be paid for in office equipment in which appellant dealt. Two policies, each for $5,000, were written upon the same terms, and of these Mr. Pugh testified, "We decided to take one of the policies when the policy arrived, the other one having been written for our approval."

As to the second policy, he testified: "The second policy was held in abeyance. It was on my desk for a good while. There was nothing done. We received no premium notice, had no dealings from the company, and we were looking for payment to be made on this trade. There was no transaction in connection with the trade and no payments made of merchandise furnished."

He further testified that, about the first of June (after the issuance and delivery of the policy in February), witness wanted to know the status of the policies, and wrote the company, and received a reply signed by C. W. Nugent, as general counsel for the company, in which a detailed report was promised to be made at a later date, but that appellee came in and assured him

232

that the policy was all right and "the deal would be all right, and we then—I believe it was at that time—we decided to take the two."

The witness further testified that the company did not comply with his request to advise him as to the status of the policies. "They delayed, and gave excuses for not replying the entire year up to within a few days of the time of the due date of the second year." Witness returned the policies to the company on October 26, and received a letter from the company advising that they had been canceled.

On August 1 witness received from the company the following letter:

"Dear Mr. Pugh: On account of the fact that Mr. J. D. Ahrens of Little Rock has severed his connection with the company, any matters pertaining to your policy No. 142710, either premium payments or otherwise, should be taken direct with the home office.

"Hoping that we many continue to serve you from the home office in an efficient manner, I beg to remain,

"Very truly yours,
"W. J. Barr,
"Manager renewal department."

The credit man of the appellant company testified that appellee did not order supplies in payment of the premiums, but he also testified, "I had a suspicion that the insurance had not been settled for, and I didn't care to let the furniture go out, because I would have to look to Mr. Ahrens personally for payment." While appellee was testifying as a witness in his own behalf, he stated that the premiums on the two policies had been paid, and that they were paid by being charged to witness' account with the insurance company, and that the statements received by him of his account from the company showed this to be a fact. Appellant objected to this testimony, and asked the court to withdraw the submission of the case, to permit it to take testimony to show that the insurance company had never treated

the premiums as being paid. The court overruled the motion to withdraw the submission upon the ground that this was an issue raised by the pleadings which appellant should have been prepared to meet.

The original complaint was filed March 2, 1926, and an amended complaint was filed March 31, 1926, in which the appellee specifically alleged that his cause of action was based upon the failure of appellants to pay the premium on the two policies, and these allegations were made more specific in response to a motion to that effect, which response was filed January 22, 1927.

Appellant filed an answer and cross-complaint on May 20, 1927, in which it was alleged, in effect, that the policies were at all times void for the reason that appellant had never accepted them. In its cross-complaint appellant prayed judgment for the sum of $70.60 due it by appellee on open account. The trial from which this appeal comes was had February 14, 1928.

In support of the motion for a withdrawal of the submission and a postponement of the trial a letter was exhibited, dated May 26, 1926, written to appellant's counsel and signed by Frank S. Anderson, written on the stationery of the general counsel of the insurance company, in which it was stated that the premiums had never been paid, and the opinion was expressed that the appellee had no right to maintain this suit.

The court properly treated this letter as hearsay, and did not abuse its discretion in refusing to permit the submission to be withdrawn to permit appellant to take depositions. As we have said, the letter was dated May 26, 1926, which was more than a year before the trial, and related to the point in issue, which was whether appellee was entitled to receive these premiums.

Pugh testified that he returned the policies in October because he was uncertain whether they were in force, and one of the reasons for his uncertainty was that he had received no premium notice from the company, nor did he receive a binding receipt. There was, how-

ever, no reason to expect a notice in regard to the premiums if appellee had paid them, as he at all times insisted he had done, and there was no necessity for a "binding receipt," when the policies themselves had been delivered.

The only letter from the insurance company properly identified was the one dated August 1, copied above, advising that appellee had severed his connection with the company, and, while it refers to only one of the policies, it refers to it as a subsisting contract. But, even after the receipt of this letter, when appellant had already been in possession of the policies since February, appellant continued to hold them until the latter part of October, and, in so doing, appellant must be held as a matter of law to have accepted both policies. The law on this question was declared in *People's Savings Bank* v. *Raines*, 175 Ark. 1155, 2 S. W. (2d) 20, and cases there cited. In that case the insured had kept in his possession a policy of insurance delivered to him about the first of February until some time in April, when it was returned. But the court held that this constituted an unreasonable delay, and that the insured must be held as a matter of law to have accepted the policy for the reason, as was there said, "it was the duty of the insured to examine the policy in a reasonable time after its delivery to him—that is, in such a time as he could have done so—and to reject it if it was not what he had contracted for, and, if he failed to do this, he will be deemed to have accepted it, and cannot avoid liability for payment of the premium note."

Here the policies were retained for a much longer period of time, and the court, in directing a verdict in favor of appellee, permitted a recovery of such portion of the annual premium as covered the time during which the insurance had been in force, until the insured voluntarily canceled it, and from that amount deducted the sum claimed by the appellant in its cross-complaint.

The judgment of the court below appears to be correct, and it is therefore affirmed.