IMPERIAL SAVINGS ASSOCIATION, Plaintiff,

v.

Dianne LEWIS; Alan B. Ford; Jeril D. Winget; James M. Vichrilli; W.V.F. Properties, Inc.; and Stewart Title Guaranty Company, Defendants.

Civ. No. C–89–980W.

United States District Court, D. Utah, Central Division.

Feb. 23, 1990.

John B. Wilson and John T. Anderson, Salt Lake City, Utah, for defendant Stewart Title Guar. Co.

## MEMORANDUM DECISION AND ORDER

WINDER, District Judge.

This matter is before the court on cross-motions by plaintiff Imperial Savings Association ("Imperial") and defendant Stewart Title Company ("Stewart") for partial summary judgment on the issue of whether there is a binding arbitration agreement between Imperial and Stewart. At a hearing on January 11, 1990 to consider Imperial's motion for appointment of a receiver and the parties' cross-motions for summary judgment, the parties agreed to submit the latter motions without oral argument. However, it was agreed at that hearing that Imperial could file a responsive pleading to Stewart's reply memorandum by January 16, 1990, and that Stewart could then answer that response. Imperial was represented at this hearing by Brent V. Manning and Richie D. Haddock and Stewart was represented by John T. Anderson.

Prior to the hearing, the court had carefully reviewed the memoranda submitted by the parties. After the parties had submitted their additional responses, the court took the matter under advisement. Having carefully reviewed all the memoranda submitted by the parties on this issue, the court has further considered the law and the facts and now renders the following memorandum decision and order.

## BACKGROUND

The following facts are undisputed by the parties. On November 10, 1987, Imperial loaned Elisha Dianne Lewis ("Lewis") $495,000 as purchase money for a house located at 7451 So. Pebble Springs Court, Salt Lake County, Utah. At the closing, Lewis delivered a Deed of Trust covering the house to Imperial. In early November, 1987, Stewart delivered a Commitment for Title Insurance issued by Stewart and dated October 30, 1987, to ICA Mortgage Corporation, the company owned by Imperial that originated the loan to Lewis.

Brent V. Manning and Richie D. Haddock, Salt Lake City, Utah, for plaintiff.

In April of 1988, Beehive Glass Co., Inc. ("Beehive") commenced *Beehive Glass v. Elisha Lewis, et al. ("Beehive")* in the Third Judicial District Court for Salt Lake County, State of Utah, alleging that it possessed a mechanic's lien with priority over the Trust Deed and seeking to foreclose that mechanic's lien. Beehive also named as defendants other persons purporting to possess mechanic's liens against the house. These other lien claimants filed cross-claims against Imperial asserting that they also possessed mechanic's liens with equal priority to Beehive's mechanic's lien and seeking to foreclose their mechanic's liens.

On July 15, 1988, Imperial's attorney called Stewart and inquired whether Stewart had ever issued a final policy of title insurance for the Trust Deed. Imperial was informed that a policy had been issued and Imperial requested that Stewart provide Imperial with a copy of that policy. In August, 1988, Stewart provided Imperial's attorney with a copy of Policy No. M–9942–111043 (the "Policy"). On August 25, 1988, Imperial wrote a letter to Stewart asking Stewart to advise Imperial whether the defense in *Beehive* should be tendered to Stewart or whether Stewart would assume the defense with counsel of its own choosing. This letter also sought advice as to whether Stewart acknowledged that the claims in *Beehive* were covered by the Policy.

Stewart assumed the defense of Imperial on September 1, 1988 through the law firm of Ivie & Young of Provo, Utah. Imperial contends this was done without any written or oral reservation of rights. *See* Complaint ¶ 54, Amended Complaint ¶ 94. In November of 1988, the Third Judicial District Court entered summary judgments for the mechanic's lien claimants in *Beehive.* In March 1989, Stewart settled seven *Beehive* claims by a total payment exceeding $40,000. On April 12, 1989 Stewart informed Imperial that it was not liable to Imperial for coverage of the claims asserted in *Beehive.* On June 8, 1989 Stewart submitted a demand for arbitration to the American Arbitration Association as to whether it was liable to indemnify Imperial for the *Beehive* claims.

Imperial now seeks partial summary judgment against Stewart that no binding arbitration agreement exists between the parties. Stewart's motion, on the other hand, seeks to compel arbitration.

## STANDARD OF REVIEW

The standard for this court to rule on summary judgment motions is set forth in Federal Rule of Civil Procedure 56(c). Summary judgment shall be granted when parties to a lawsuit do not dispute any material facts and judgment in favor of the moving party is appropriate as a matter of law. A moving party may demonstrate no material facts are disputed through pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. The moving party must show that "there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party has carried this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553.[1] The non-moving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552. The evidence sufficient to make a showing must be admissible under the evidentiary standard to be used at trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

In considering a summary judgment motion, this court does not weigh the evidence but instead inquires whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that

---

**1.** The summary judgment motion may be "opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Id.*

party." *Id.* at 249, 106 S.Ct. at 2511.[2] To determine if sufficient evidence exists "the inferences to be drawn from the underlying facts [in the admissible record] ... must be viewed in the light most favorable to the [nonmoving] party." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (*quoting United States v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)). The motion will be granted if it raises at least one legally sufficient defense to bar the plaintiff's claim and no triable issue of fact relates to that defense.

## DISCUSSION

■ We note at the outset of our discussion that Utah, as a matter of policy, favors arbitration as a speedy and inexpensive method of dispute resolution. *Utility Trailer Sales of Salt Lake, Inc. v. Fake*, 740 P.2d 1327 (Utah 1987); *Robinson & Wells, P.C. v. Warren*, 669 P.2d 844 (Utah 1983). With this in mind, we address the parties' motions in turn.

*1. Stewart's Motion.*

■ Stewart seeks to compel arbitration. Imperial argues that the parties did not agree to arbitrate. It is undisputed that Imperial requested an ALTA (American Land Title Association) title insurance policy from Stewart. It is further undisputed that Stewart sent Imperial an ALTA Title Commitment dated October 30, 1987, which does not contain a provision for arbitration. The Policy itself, however, does contain an arbitration provision. *See* Exhibit A, Haddock Affidavit of November 13, 1989 ("Haddock Affidavit"). Imperial argues that it never received the original Policy but admits that it received a copy of the Policy "within a few days after August 2, 1988." Haddock Affidavit ¶¶ 2, 5. Stewart admits that there is a question of fact as to whether Imperial received the original Policy. Stewart's Memo Oppos. at 2. Stewart further acknowledges that "the record is devoid of any *evidence* regarding plaintiff's understanding or expectation as to whether disputes under the Policy would be resolved by arbitration or litigation." Stewart's Memo Oppos. at 10. It would seem, then, that there are questions of fact as to whether the parties originally intended their agreement to include an arbitration provision, whether Imperial ever received the original Policy issued by Stewart, and whether a standard ALTA policy routinely contains an arbitration provision.

Stewart further argues that Imperial had knowledge of the arbitration provision through Imperial's receipt of at least three other title policies containing an arbitration provision during the same general time period. In support of its argument, Stewart offers the affidavit of Tina Perkins, an employee of Stewart and its successor in interest Backman–Stewart Title Company, in which Perkins claims to "have personal knowledge that during the period immediately preceding and following the issuance of the Title Policy, Imperial received from Stewart and Backman Title Company" at least three other policies containing an arbitration provision. Perkins Affidavit ¶ 12. The court, however, is unable to conclude as a matter of law that, based on this evidence, Imperial actually received these three policies or, even if it did, that receipt of these policies would be sufficient to charge it with knowledge that there was an arbitration provision in the subject Policy.

Stewart alternatively argues that, whether or not Imperial received the original Policy, it is undisputed that Imperial did receive a copy of the Policy in August of 1988 and did not object to the arbitration provision until July of 1989, some eleven months later. As such, the argument goes, the retention of the Policy without objection beyond a reasonable time constitutes an acceptance of the Policy, including the arbitration provision. For this principle, Stewart relies on *Western Farm Bureau Mut. Ins. Co. v. Barela*, 79 N.M. 149, 441 P.2d 47 (1968) and *Phillis Dev. Co. v. Com-*

---

**2.** "The mere existence of a scintilla of evidence in support of the plaintiff's position" is insuffi-

cient. *Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. at 2512.

*mercial Standard Ins. Co.*, 457 P.2d 558 (Okla.1969).[3]

In *Barela*, the insured company received an employer liability insurance policy from the insurer sometime between April 15 and May 15 of 1963. The policy contained an exclusionary clause exempting the insurer from liability if benefits for an employee's injury was payable or required to be provided under workmen's compensation. The policy was retained by the insured for approximately nine to ten months without objection until an employee accident occurred. In a declaratory action by the insurer, the trial court found for the insurer and the Supreme Court of New Mexico affirmed, stating that it was firmly committed to the principle that "receipt and retention of the policy without objection, by one who has had an opportunity to examine it for a reasonable time, is regarded as an acceptance of its terms." *Barela*, 441 P.2d at 49.[4] The *Barela* court relied, in part, on *Porter v. Butte Farmers Mut. Ins. Co.*, 68 N.M. 175, 360 P.2d 372 (1961), where receipt and retention of hail insurance policies for approximately five months constituted acceptance of the policies.

In *Phillis Dev. Co. v. Commercial Standard Ins. Co.*, 457 P.2d 558 (Okla.1969), the Supreme Court of Oklahoma also acknowledged that "receipt and retention of the policy without objection beyond a reasonable time may be deemed an acceptance." *Id.* at 559. The issue in *Phillis* revolved around the fact that the insured, in its opening statement at trial, admitted that not more than thirty days had elapsed between delivery of the policy and the loss. The trial court granted insurer's motion for judgment made at the close of the insured's opening statement to the jury. The *Phillis* court reversed the trial court's summary disposition of the case, finding that the insured's statement that not more than thirty days had transpired between delivery and loss was not "ipso facto" an unreasonable period where the admission covered a period of time from one to thirty days. *Phillis*, 457 P.2d at 560.

We are guided also by the following:

An applicant who is advised of a ground upon which he is entitled to reject a policy tendered to him by the insurer should notify the insurer of his refusal to accept the policy as written; the notice should be given promptly, that is, at once, or at least within a reasonable time after the cause of rejection was, or should have been, discovered. A rejection cannot be made by a secret unexpressed intention. An applicant is regarded as having accepted the policy as written, if he reads it, or has it read to

---

3. *See also Interstate Life & Accident Ins. Co. v. Flanagan*, 284 So.2d 33 (Miss.1973) (receipt and retention of life insurance policy for four months constitutes an acceptance of the policy).

4. The court is aware that in *Stock v. Adco Gen. Corp.*, 96 N.M. 544, 632 P.2d 1182 (Ct.App.), cert. denied, 96 N.M. 543, 632 P.2d 1181 (1981), the New Mexico Court of Appeals declined to accept insurer's *Barela* argument where an insurer, knowing that a named driver endorsement was a departure from the usual provisions in like policies, furnished its general agent with special red stickers to be attached to the face page of the policy, warning of the endorsement and its limited coverage. The sticker was not attached to the policy before delivery to the insured. The *Stock* court found that the insured did not reasonably expect the policy to have a named driver provision, was not made aware of this unusual departure, and had reason to expect the policy would be like others he had received insuring similar equipment against physical damage. Therefore, the court reasoned, the insured was only required to make such examina-

tion as was reasonable under the circumstances. The court found that the insured's failure to read the policy for the seven months from receipt until loss was not contributory negligence and did not bar the insured's recovery.

These facts make *Stock* distinguishable from *Barela* and from the case at bar. In the instant case, it is undisputed that Imperial reviewed the policy shortly after receipt, contacted Stewart about coverage under the Policy, and made no objection to any provision of the Policy until eleven months later, when it objected to the arbitration provision.

We note also that in *State Farm Fire and Casualty Co. v. Price*, 101 N.M. 438, 684 P.2d 524 (Ct.App.1984), the New Mexico Court of Appeals acknowledged with approval the *Barela* rule that "receipt and retention of an insurance policy without objection by one who has had an opportunity to examine it for a reasonable time is regarded as an acceptance. The insured is required to familiarize himself with its terms." *Id.* 684 P.2d at 532 (quoting *Western Farm Bureau Mut. Ins. Co. v. Barela*, 79 N.M. 149, 441 P.2d 47 (1968)).

him, and does not notify the company of his rejection thereof.

If the period of retention is so great that a return of the policy thereafter would be unreasonable, the court may determine the matter as a question of law.[5] The court will rule as a matter of law that the insured's delay was unreasonable where the facts reasonably admit of no other conclusion.

1 COUCH ON INSURANCE 2d § 12:10 (1984) (citations omitted).

In this case, Imperial learned of the action in *Beehive* and retained Richie D. Haddock to represent it. At that time, according to Mr. Haddock's affidavit, Imperial's files did not contain a title insurance policy for the Lewis loan. Consequently, Imperial, through Mr. Haddock, requested a copy of the Policy from Stewart, which Imperial received "a few days after August 2, 1988." Haddock Affidavit, ¶ 5. Presumably the Policy was requested because of the *Beehive* action. In fact, shortly after receipt of the Policy, and because of having received it, Imperial contacted Stewart regarding coverage under the Policy.

Specifically, Imperial wrote to Stewart on August 25, 1988, advising Stewart of the *Beehive* action, asking whether the defense of the suit should be tendered to Stewart or whether Stewart desired to assume the defense with counsel of its own choice, and asking whether Stewart acknowledged that the claims in *Beehive* were covered by the Policy. *See* Exhibit G, Amended Complaint. Imperial made no objection to the arbitration provision. In response, Stewart informed Imperial on September 1, 1988, that it had retained the law firm of Ivie and Young to defend Imperial in the *Beehive* action. *See* Amended Complaint ¶ 93; Haddock Affidavit ¶ 7.

Under the circumstances of this case, the court is persuaded as a matter of law that Imperial's receipt of a copy of the Policy early in August 1988 and its retention for

over eleven months without objection constitutes an acceptance of the Policy, including the arbitration provision. Imperial failed to object upon review of the Policy to determine its rights in connection with the *Beehive* suit. In addition, on April 12, 1989, Stewart informed Imperial that the defense in *Beehive* presently provided by Stewart, and any defense required in the future, was provided with a reservation of all rights and defenses Stewart might have against paying any loss or expense under the Policy. Stewart had concluded that it was not liable to Imperial for coverage of the *Beehive* claims. In this same letter, Stewart further alerted Imperial that Stewart "reserve[d] the option to take appropriate steps to have the issue of its loss, liability and its reserved rights determined by means of a declaratory judgment action, or otherwise." *See* Exhibit H, Amended Complaint; Exhibit C, Haddock Affidavit. Again, Imperial made no objection to the arbitration provision. On June 8, 1989 Stewart filed a demand for arbitration with the American Arbitration Association (the "AAA"). *See* Exhibit C, Haddock Affidavit of October 27, 1989. Imperial received a copy of this demand on or about June 30, 1989. *See* Haddock Affidavit of October 27, 1989, ¶ 6. On July 18, 1989 Imperial advised Stewart and the AAA that Imperial was not obligated to arbitrate this dispute. *Id.* ¶ 7; Stewart's Memo Oppos. at 4.

Accordingly, the court finds that under these particular circumstances, Imperial's receipt of the Policy in early August 1988, with no objection to the arbitration provision until July 18, 1989, is an acceptance of all the terms of the Policy as a matter of law. Consequently, the court finds the parties are bound by the arbitration provision under the Policy.

### 2. *Imperial's Motion.*

 Both parties agree that on March 16, 1987, the Utah Legislature amended

---

5. *See, e.g., Pugh v. Ahrens,* 178 Ark. 230, 10 S.W.2d 873 (1928) where the court found that the insured accepted two life insurance policies as a matter of law. In *Pugh,* the policies were received and retained without objection for approximately eight months. *Id.* 10 S.W.2d at 874.

The court relied on *People's Sav. Bank v. Raines,* 175 Ark. 1155, 2 S.W.2d 20 (1928), where receipt and retention without objection for approximately two to three months was found to constitute acceptance as a matter of law.

Utah Code Annotated § 31A–21–314(2) to allow insurance policies to contain "permissible arbitration provisions." Both parties also agree that permissible arbitration provisions were not defined until August 1, 1988, when Utah Administrative Rule 540–122: PERMISSIBLE ARBITRATION PROVISIONS (the "Rule") went into effect. Imperial argues that since there was no such thing as a "permissible arbitration provision" during the seventeen-month hiatus between the amendment and the Rule, Stewart could not include one in its policies. The court does not agree with this argument, given Utah's admitted policy of favoring arbitration as a speedy and inexpensive method of resolving disputes.

Imperial further argues that the arbitration provision fails because it does not meet the requirements of Subsection 4(5) of the Rule, which provides that

> Each application or binder pertaining to an insurance policy which contains a permissible arbitration provision must include or have attached a prominent statement substantially as follows:
> ANY MATTER IN DISPUTE BETWEEN YOU AND THE COMPANY MAY BE SUBJECT TO ARBITRATION AS AN ALTERNATIVE TO COURT ACTION PURSUANT TO THE RULES OF (THE AMERICAN ARBITRATION ASSOCIATION OR OTHER RECOGNIZED ARBITRATOR), A COPY OF WHICH IS AVAILABLE ON REQUEST FROM THE COMPANY. ANY DECISIONS REACHED BY ARBITRATION SHALL BE BINDING UPON BOTH YOU AND THE COMPANY. THE ARBITRATION AWARD MAY INCLUDE ATTORNEY'S FEES IF ALLOWED BY STATE LAW AND MAY BE ENTERED AS A JUDGMENT IN ANY COURT OF PROPER JURISDICTION.

Such statement must be disclosed prior to the execution of the insurance contract between the insurer and the policy holder and, in the case of group insurance, shall be contained in the certificate of insurance or other disclosure of benefits.

Utah Admin.R. 540–122–4(5) (1989). It is undisputed that the Commitment does not contain this statement. The Policy contains an arbitration provision, but Imperial argues that it was not disclosed prior to the issuance of the Policy and it is not the prominent statement required by the Rule.

Subsection 2 of the Rule states that the purpose of the Rule is to:

> 1. *define* the term "permissible arbitration provision" as set forth in Sections 31A–21–313(3)(c) [6] and 31A–21–314(2), Utah Code Annotated and
> 2. *provide guidelines* upon which disclosure of a contract arbitration provision is to be made.

Utah Admin.R. 540–122–2 (1989) (emphasis added).

Stewart, therefore, argues that the Rule's intent is two-fold: "to define *substantively* the term 'permissible arbitration provision' and to then articulate guidelines for *disclosure* of such provisions." Stewart's Reply at 3. Stewart further argues that this distinction is expressly recognized in Subsection 4(5) of the Rule which states that "each application or binder pertaining to an insurance policy which contains a permissible arbitration provision must include or have attached a prominent statement substantially as follows."

The Rule provides that "[b]oth compulsory and optional binding arbitration at the election of either the insured or the insurer are 'permissible arbitration provisions.'" Utah Admin.R. 540–122–4(3) (1989). "Compulsory binding arbitration" is defined as

---

**6.** Utah Code Annotated § 31A–21–313 was enacted in 1985 and also refers to "permissible arbitration provisions." Section 31A–21–313 provides in part that

> (3) No insurance policy may:
> (c) provide that no action may be brought, subject to permissible arbitration provisions in contracts.

With reference to this provision, there was an even longer time period during which a permissible arbitration provision was not defined. Given Utah's policy of favoring arbitration, the court is reluctant to find that no permissible arbitration provision could be included in an insurance contract during this lengthy period of time.

a contract provision requiring arbitration as an automatic and exclusive remedy for any dispute involving a contract of insurance to the exclusion of any otherwise available judicial remedy, provided that the claim or controversy exceeds the jurisdictional limit of the small claims court of the state where the action would be brought.

Utah Admin.R. 540–122–3(3) (1989).

The arbitration provision in the Policy is one for compulsory binding arbitration at the election of either the insured or the insurer. This is a permissible arbitration provision as subsequently expressly defined by the Rule. That the term "permissible arbitration provision" was not defined by an administrative rule for some seventeen months is not fatal to Stewart's claim on this issue. The court does not agree that, during this hiatus, parties could not include a provision for arbitration in their contracts.

The fact that Stewart did not meet the prior disclosure guidelines of the Rule, promulgated some nine months after the Policy was issued, does not render this arbitration provision invalid. The disclosure requirements did not become effective until after the Rule was promulgated. The court, therefore, finds no statutory impediment to the Policy's arbitration provision.

■ In a related argument, Imperial contends that since "permissible arbitration provisions" had no meaning during the hiatus, the phrase was necessarily ambiguous, and thus so was the arbitration provision itself. Relying on *Metropolitan Property & Liability Ins. Co. v. Finlayson,* 751 P.2d 254 (Utah Ct.App.1988), *vacated, appeal dismissed,* 766 P.2d 437 (Utah Ct.App. 1989), Imperial argues that this ambiguous provision in the insurance contract must therefore be construed against Stewart as the drafter.

The court is not persuaded that this arbitration provision is necessarily ambiguous before the term "permissible arbitration provision" was defined administratively. In addition, this court believes that an arbitration clause is distinguishable from other provisions in an insurance contract. Furthermore, the court is of the opinion that an arbitration clause is not to be construed as favoring one party or the other. Hence this court does not conclude that, even if this arbitration provision were considered ambiguous, the arbitration provision would be construed against Stewart and rendered ineffective.

■ Imperial also argues that the dispute between the parties is not encompassed within the terms of the arbitration provision. Specifically, Imperial argues that it is entitled to judgment under an "estoppel to deny coverage" theory "which is wholly independent of a determination of coverage under the terms of the insurance policy." Imperial's Memorandum in Support at 9. Specifically, Imperial relies on *State Farm Mutual Auto Ins. Co. v. Kay,* 26 Utah 2d 195, 487 P.2d 852 (1971), *overruled on other grounds, Farmers Ins. v. Call,* 712 P.2d 231 (Utah 1985), for the proposition that an insurer is estopped from denying coverage if, after assuming and controlling the insured's defense, a judgment is entered against the insured.

The court is of the opinion that the dispute between the parties is within the scope of this arbitration provision. The provision is quite broad as to arbitrable matters. "Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the insured arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation."

Imperial's claims against Stewart are for (1) indemnification for the *Beehive* claims and (2) breach of contract. Stewart's demand for arbitration seeks a declaration that Stewart is not liable for payment of lien claims asserted in *Beehive* and an award of any amounts paid pursuant to Stewart's reservation of rights. *See* Exhibit C, Haddock Affidavit of October 27, 1989. Imperial's estoppel defense would logically arise during the course of arbitrating the parties' dispute.

■ Imperial alternatively argues that Stewart, by denying coverage of the *Bee-*

*hive* claims, has breached and repudiated the contract of insurance, releasing Imperial from its contractual obligations, including the obligation to submit to arbitration. Imperial relies on *Stephens v. Union Assur. Soc.*, 16 Utah 22, 50 P. 626 (1897); *Porter v. Empire Fire & Marine Ins. Co.*, 12 Ariz.App. 2, 467 P.2d 77, *vacated*, 106 Ariz. 274, 475 P.2d 258, *modified and reh'g denied*, 106 Ariz. 345, 476 P.2d 155 (1970); and *McNall v. Farmers Ins. Group*, 181 Ind.App. 501, 392 N.E.2d 520 (1979), *transfer denied*, 423 N.E.2d 593 (Ind.1981).

*Stephens* is an 1897 Utah case concerning an insurer (who had insured property against loss by fire) who denied all liability and refused to appraise or adjust the loss. A proposal to arbitrate was not made until after suit was brought by the insured to recover on the policy. The Utah Supreme Court stated that "under such circumstances, the Company could acquire no new right by offering to arbitrate after the action was brought." *Stephens*, 50 P. at 628. Imperial has cited no recent Utah cases that address this issue and the court has found none.

In *McNall*, the Indiana Court of Appeals held that denial of coverage under the policy until an action is brought to determine coverage constitutes a waiver of the right to arbitrate. In the *McNall* case, however, the issue of whether the policy afforded coverage was not included within the scope of the policy's arbitration provision. The trial court found against the insurer on the issue of coverage and the Indiana Court of Appeals affirmed that no other issues were subject to arbitration because denial of coverage constituted a waiver of the arbitration agreement. *McNall*, 392 N.E.2d at 524.

In *Porter*, the insured denied liability under the insured's uninsured motorist coverage. The trial court granted the insurer's motion to dismiss on the ground that the person driving the auto was not an uninsured motorist under the insured's policy. The Arizona Court of Appeals reversed, finding the driver was an uninsured driver in this instance. At the conclusion of the opinion, the Court of Appeals briefly

addressed the other two grounds urged by the insurer in its motion to dismiss. "When appellee [insurer] denied coverage, it was precluded from subsequently invoking the policy provisions which were inserted for its benefit." *Porter*, 467 P.2d at 81. The policy provisions referred to were an arbitration provision and a provision prohibiting the insured from settling without the written consent of the insurer.

In the instant case, Stewart informed Imperial on September 1, 1988 that it would assume the defense of Imperial in the *Beehive* action. Imperial alleges this was done without reservation of rights. *See* Complaint ¶ 54, Amended Complaint ¶ 94. On April 12, 1989, Stewart informed Imperial that the defense provided by Stewart in *Beehive* was with reservation because Stewart had concluded that it was not liable for the *Beehive* claims. The court does not agree that this denial of coverage renders the arbitration provision inoperable.

We are persuaded by the more recent reasoning used by the Arizona Court of Appeals. In *EFC Dev. Corp. v. F.F. Baugh Plumbing, Inc.*, 24 Ariz.App. 566, 540 P.2d 185, 186 (1975), the Arizona Court of Appeals addressed the question of whether "a party to a contract [may] demand the arbitration rights thereunder when that party itself has breached, abandoned, or repudiated the contract without first asking for arbitration of its grievances." At issue was an alleged breach of the contract by the contractor [appellee] in reducing the size of its work force. The other party to the contract [appellant] argued that this alleged breach constituted an implied abandonment and repudiation of the right to arbitrate under the contract.

In answering the question in the affirmative, the court reasoned that

the very purpose of arbitration provisions would be defeated and their effectiveness severely limited if a party were held to have abandoned his arbitration rights merely because his actions might be construed to constitute a breach of the contract prior to the time he seeks a clarification of those rights through arbi-

tration. In effect, appellant would require a predetermination by the court of the parties' rights, i.e., whether or not one of them had actually breached the contract as a precondition to arbitration proceedings, notwithstanding the fact that the parties by their contract have established arbitration proceedings as the proper forum for the determination of such questions.

By its very nature the arbitration clause in the contract is distinct from other clauses. It is not to be considered as a clause in favor of one party or the other, the performance of which might be excused by the breach of other provisions of the contract. Rather, the arbitration clause constitutes the consent of the parties to the establishment of extra-legal machinery for the settlement of their disputes. Even if we assume that appellee [breached] its obligations under the contracts, we find no merit in appellant's contention that such breach constituted an abandonment or repudiation so as to render the arbitration provisions of the contract unavailable to the appellee.

*Id.* 540 P.2d at 187.

In 1984, the court extended its rationale in *EFC Dev. Corp.* to conduct alleged to be a repudiation of the entire agreement. *Rancho Pescado v. Northwestern Mut. Life Ins.*, 140 Ariz. 174, 680 P.2d 1235 (Ct.App.1984). The issue in *Rancho Pescado* revolved around a license agreement between Rancho Pescado and Northwestern to permit Rancho Pescado to raise catfish in a canal owned by Northwestern. Shortly after the license was granted, Northwestern notified Rancho Pescado that it was terminating the entire license agreement for cause. The court, relying on *EFC Dev. Corp.*, held that such action by Northwestern did not constitute an abandonment or repudiation of the arbitration clause of the agreement. *Id.* 680 P.2d at 1241.

Finally, in 1985, the court reversed a trial court's refusal to compel arbitration where one party to the contract declared the entire contract to be "null and void". *U.S. Insulation, Inc. v. Hilro Const. Co.*, 146 Ariz. 250, 705 P.2d 490 (Ct.App.1985). The court concluded that although the words "null and void" were used to describe the contract, an examination of the letters left no doubt that the party was referring to its performance obligations, not the legal enforceability of the contract. *Id.* 705 P.2d at 497. The court reasoned that a distinction must be made between a denial that the contract is legally enforceable and a denial of any obligation to perform under the contract.

The court again recognized that while a repudiation of the arbitration provision itself will constitute a waiver of the right to arbitrate, a repudiation of any other obligation under the contract will not. "This distinction is theoretically consistent with the principle of separability[7] and is furthermore required by common sense." *Id.* at 494.

We agree with the analysis of the Arizona Court of Appeals. In the instant case, Stewart is not arguing that the contract is not legally enforceable. And, quite the contrary, Imperial seeks to receive certain benefits under the contract. Stewart is asserting only that it is not liable under the contract for the *Beehive* claims asserted against Imperial.

Our conclusion also applies to the argument that Imperial made in its Supplemental Memorandum that Stewart's refusal to withdraw its reservation of rights constitutes a repudiation of the policy and thus a waiver of the right to compel arbitration. The court concludes, therefore, that Stewart has not waived the right to seek arbitration of its dispute with Imperial.

Accordingly, based on the foregoing and good cause appearing,

IT IS HEREBY ORDERED that

---

**7.** The court included in its analysis the fact that the United States Supreme Court, in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), endorsed the concept of separability, whereby the arbitration clause is considered to be an agreement independent and separate from the principal contract. *U.S. Insulation, Inc. v. Hilro Const. Co.*, 146 Ariz. 250, 705 P.2d 490, 493 (Ct.App. 1985).

1. Stewart's Motion for Partial Summary Judgment to compel arbitration is GRANTED.

2. Imperial's Motion for Partial Summary Judgment is DENIED.

3. The parties shall seek arbitration concerning Stewart's liability under the Policy for the claims asserted in the *Beehive* action, including Imperial's claims for indemnification and breach of contract against Stewart.