1999 UT App 199

Gerald McCOY, individually and as personal representative of, the estate of Frieda McCoy, deceased, Plaintiff and Appellee,

v.

**BLUE CROSS AND BLUE SHIELD OF UTAH, a Utah corporation, Defendant and Appellant.**

No. 981246–CA.

Court of Appeals of Utah.

June 17, 1999.

Andrew H. Stone and James E. Magleby, Jones Waldo Holbrook & McDonough, Salt Lake City, for Appellant.

Paul M. Simmons, David R. Olsen, and Jeffrey D. Eisenberg, Dewsnup King & Olsen, Salt Lake City, for Appellee.

Before WILKINS, P.J., GREENWOOD, Associate P.J., and BENCH, J.

## OPINION

WILKINS, Presiding Judge:

¶ 1 Defendant Blue Cross and Blue Shield of Utah (Blue Cross) appeals the trial court's order denying its motion to compel arbitration. We affirm.

## BACKGROUND

¶ 2 In October 1985, Gerald McCoy purchased a health insurance policy known as the Qualifier I plan (the plan) from Blue Cross. Under the terms of the plan, Blue Cross reserved "the absolute right to modify or amend this [a]greement from time to time provided, however, that no such modification or amendment shall be effective until thirty (30) days after written notice thereof has been given to the [s]ubscriber." The plan further provided that "[a]ny notice ... shall be deemed to have been given to and received by the [s]ubscriber when deposited in the United States Mail with first class postage prepaid and addressed to the [s]ubscriber at the address shown in the records of the [p]lan."

¶ 3 At the time Mr. McCoy purchased the plan, it did not contain an arbitration provision. However, Blue Cross later added an arbitration clause, which was to take effect on January 1, 1986. In March 1994, Mr. McCoy's wife was diagnosed with breast cancer. When chemotherapy proved ineffective, Mr. McCoy requested that Blue Cross preauthorize payment for an alternative breast cancer treatment. Blue Cross denied Mr. McCoy's request. Mr. McCoy appealed the decision to Blue Cross's Appeals Committee, which ultimately upheld the denial of preauthorization. In October 1994, Mr. McCoy appealed the Committee's decision to Blue Cross's general counsel, Frank Pignanelli. In January 1995, Mr. McCoy received a letter from Mr. Pignanelli "conclu[ding] that the decision of the Benefit Appeals Committee is correct." The letter also stated that "[i]f you remain dissatisfied with this decision, you have the right to seek binding arbitration of the dispute pursuant to the Rules of the American Arbitration Association. The Customer Service Department can assist you with information about how to initiate and participate in arbitration." Mr. McCoy asserts that this letter was the "first [time he] received notice that his policy purportedly provided for arbitration."

¶ 4 In February 1997, Mr. McCoy brought suit against Blue Cross alleging various

claims arising out of Blue Cross's refusal to provide coverage for treatment of his wife's breast cancer. Blue Cross responded by filing a motion to compel arbitration and stay the proceedings. A hearing was held in August 1997 to determine whether "the arbitration provision enacted by [Blue Cross] after [Mr. McCoy and Blue Cross] contracted compels [Mr. McCoy] to arbitrate."

¶ 5 The main issue before the trial court was whether Blue Cross complied with the plan's notice requirement by sending a written notice of the arbitration provision to Mr. McCoy. Blue Cross offered several affidavits stating that between 1985 and 1990 it mailed three separate notices of the arbitration provision to all persons enrolled in the plan. However, Mr. McCoy denied receiving these mailings and argued that the evidence presented by Blue Cross failed to establish that Blue Cross actually sent Mr. McCoy written notice of the arbitration provision. Thus, Mr. McCoy asserted the arbitration provision was invalid because he could not agree to a provision of which he was unaware.

¶ 6 At the conclusion of the hearing, the trial court ordered a continuance and requested supplemental briefing on the issue of whether Mr. McCoy "waive[d] any objection to arbitration he may have had after being notified in January of 1995 that arbitration was going to be required [by] continu[ing] to pay insurance premiums and [remain] covered by Blue Cross for at least two years thereafter." The trial court also stated that Blue Cross was "entitled to" submit additional affidavits as evidence that it sent written notice of the arbitration provision to Mr. McCoy.

¶ 7 When the hearing resumed in February 1998, the trial court had before it additional affidavits submitted by Blue Cross and heard arguments from both parties regarding whether Blue Cross adequately complied with the plan's notice requirement. On February 26, 1998, the trial court entered findings of fact, conclusions of law, and an order denying Blue Cross's motion to compel arbitration. The trial court ruled that Blue Cross had failed to establish that it sent Mr. McCoy notice of the arbitration provision and

"[c]onsequently, Blue Cross [could not] apply the arbitration amendment to him." The trial court did not explicitly rule on Blue Cross's argument that Mr. McCoy waived any objection to the arbitration clause by failing to cancel his policy after being notified of the arbitration provision. Blue Cross appeals.

## ISSUE AND STANDARD OF REVIEW

¶ 8 Blue Cross assails the trial court's conclusion that Blue Cross failed to establish a valid arbitration agreement between the parties. First, Blue Cross contends that it presented sufficient evidence to establish the arbitration provisions were mailed to Mr. McCoy, thus creating a binding arbitration agreement between the parties. Second, Blue Cross argues that Mr. McCoy's failure to object to the arbitration provision for approximately two years after he became aware of the arbitration provision constitutes an acceptance of its terms.

¶ 9 In reviewing the trial court's decision, we must first identify the appropriate standard of review. The parties disagree on this court's scope of review. Blue Cross contends that we should review the trial court's determination that Blue Cross failed to establish the existence of a valid arbitration agreement de novo. Mr. McCoy insists that the more deferential standard of abuse of discretion is appropriate.

¶ 10 We conclude that *Cade v. Zions First National Bank*, 956 P.2d 1073 (Utah Ct.App. 1998), controls this case. In *Cade*, the trial court determined that the parties had agreed to submit their disputes to arbitration. *See id.* at 1076. The trial court based this determination on documentary evidence without conducting an evidentiary hearing on the disputed facts. *See id.* We stated that "[b]ecause this conclusion was a legal one, we review it for correctness." *Id.; see also Reed v. Davis County Sch. Dist.*, 892 P.2d 1063, 1064 (Utah Ct.App.1995)(stating that determination of whether valid arbitration agreement exists is a question of law). In this case, the trial court also based its denial of Blue Cross's motion on affidavits and other documentary evidence without conducting

an evidentiary hearing. This decision was a legal conclusion and therefore, we review it for correctness, according no particular deference to the trial court's decision.

## ANALYSIS

¶ 11 Parties are required to arbitrate only those disputes they have agreed to submit to arbitration. *See* Utah Code Ann. § 78–31a–4(1) (1996). Thus, a court deciding a motion to compel arbitration must first determine whether the parties agreed to arbitrate, and if so, whether the agreement encompasses the claims asserted. *See id.* In this case, Mr. McCoy does not dispute the applicability of the arbitration provision to his claims. Accordingly, we need only determine whether Blue Cross established a binding agreement to arbitrate.

¶ 12 Blue Cross argues that the trial court's ruling was erroneous because Blue Cross established the existence of a valid agreement to arbitrate. More specifically, Blue Cross contends the affidavits it submitted demonstrate that it complied with the plan's notice requirement by mailing a letter which included the arbitration provision to Mr. McCoy. We disagree.

### 1. Notice

¶ 13 A fundamental tenet of the law of contracts between an insured and insurer is that "insurance policies should be strictly construed against the insurer and in favor of the insured." *United States Fidelity & Guar. Co. v. Sandt,* 854 P.2d 519, 522 (Utah 1993). Under this principle, an insurer is required to strictly comply with all provisions that give an insured notice of the terms, conditions, limitations or changes to an insurance policy. *See Majernicek v. Hartford Cas. Ins. Co.,* 240 Conn. 86, 688 A.2d 1330, 1334 (1997) (stating when written notice is required, "an insurer must comply strictly with policy provisions").

¶ 14 In this case, Blue Cross reserved the absolute right to modify or amend the policy by providing "written notice ... to the [s]ubscriber." However, any modification or amendment to the plan did not become "effective until thirty (30) days after ... [the

notice] has been given to the subscriber." The plan further provided that "[a]ny notice ... shall be deemed to have been given to and received by the [s]ubscriber when deposited in the United States Mail with first class postage prepaid and addressed to the [s]ubscriber at the address shown in the records of the [p]lan." Because the arbitration agreement was an amendment to Mr. McCoy's insurance policy, it is only binding on Mr. McCoy if he was afforded proper notice of the amendment. Therefore, we first address whether Mr. McCoy received adequate notice in compliance with the terms of the plan's notice provision.

### A. Proof of Mailing

¶ 15 Under the plan's notice provision, Blue Cross was required to provide written notice to specific subscribers of changes to their policy. More specifically, Blue Cross was required to mail the notice with first class postage to a subscriber at his or her address of record. At trial, Blue Cross submitted several affidavits in an attempt to demonstrate that it prepared and mailed a letter, including the arbitration provision, to Mr. McCoy. These affidavits show that in November 1985, Blue Cross's programming department prepared a magnetic tape containing the names and addresses of over 30,000 subscribers who were to receive a copy of the arbitration provision. The magnetic tape was then forwarded to a printing company which printed a cover letter to be mailed with the arbitration provision, inserting the subscribers' names and addresses on Blue Cross letterhead. The letters, including the arbitration provision, were then forwarded to a mailing service which inserted the materials into envelopes and delivered the mailings to the post office.

¶ 16 Although this evidence demonstrates that Blue Cross mailed over 30,000 letters to plan subscribers and establishes its general mailing procedure, the affidavits fail to specify whether Mr. McCoy's name and address were actually on the magnetic tape or whether written notice of the arbitration provision was actually prepared and sent to Mr. McCoy. Instead, the affidavits merely state that because Mr. McCoy was a plan subscrib-

er the "magnetic tape ... *would have* included" his name. However, Blue Cross failed to show that notice of the arbitration agreement was sent to any specific subscribers, including Mr. McCoy. In addition, Blue Cross failed to present any evidence that notice of the arbitration agreement was sent by first class mail as required by the plan's notice provision. We therefore conclude that the evidence presented by Blue Cross was insufficient to establish compliance with the plan's notice provision.

¶ 17 Blue Cross relies on this court's decision in *Baumgart v. Utah Farm Bureau Insurance Co.*, 851 P.2d 647 (Utah Ct.App. 1993), to support its argument that "the [a]ffidavits submitted by Blue Cross defeat [Mr.] McCoy's denial of receipt of the [a]rbitration [a]greement." However, *Baumgart* is readily distinguishable from the case at bar. In *Baumgart,* the insurer canceled the insured's policy for failure to pay premiums and sent the insured a notice of cancellation. *See id.* at 650. The policy at issue provided that a cancellation notice " 'must be delivered or mailed by first class mail.' " *Id.* The insured challenged the cancellation, presenting an "affidavit in which he claim[ed] he never actually received the cancellation notice." *Id.* at 652. We concluded that the insured's denial of receipt did not create an issue of fact sufficient to survive summary judgment. *See id.* This determination was based in part on the fact that the insurer "produced a copy of [the postal service form] which it used to record addresses to which it sent certified mail .... indicat[ing] that the United States Postal Service received from [the insurer] a notice of cancellation form mailed" to the insured at his correct business address. *Id.* at 650. Thus, in *Baumgart* there was specific evidence that the insurer fully complied with its cancellation notice requirement by actually delivering and mailing the cancellation notice to the insured. *See id.* at 652.

¶ 18 In this case, Blue Cross did not introduce any document from its business records showing that the arbitration provision was actually mailed to Mr. McCoy. Rather, Blue Cross relies on affidavits stating that because Mr. McCoy was a plan subscriber, the "mag-netic tape' ... *would have* included" his name. This evidence is inadequate to establish that Blue Cross complied with the plan's notice requirement. Although Blue Cross argues our holding will place an unreasonable burden on it to prove that individual subscribers were notified of policy amendments, we fail to see the difficulty or added expense in requiring Blue Cross to retain the magnetic tape containing the name of each individual subscriber to whom notice was mailed, or some other actual record demonstrating those names and addresses.

## B. Inference of Mailing

¶ 19 Blue Cross next argues that the trial court erred in denying its motion to compel arbitration because it established an inference that notice of the arbitration agreement was mailed to Mr. McCoy. Again, we disagree.

¶ 20 Utah common law provides that in order for an inference of mailing to arise, a party must present evidence of an office mailing custom and "that the particular mailing in question occurred pursuant to the established custom." *Litster v. Utah Valley Community College,* 881 P.2d 933, 940 (Utah Ct.App.1994). In establishing an office custom, a party must demonstrate the document in question was: (1) prepared for mailing, that is, the document was written, signed, placed in an envelope, addressed, and deposited in the regular place of mailing; and (2) that the party followed the office mailing custom. *See id.* at 941. Although courts have allowed habit or custom evidence to show that an office mailing custom was followed, direct evidence is required to prove that a document was prepared for mailing. *See id.* at 940. Thus, in order for Blue Cross to establish a mailing custom, it was required to present direct evidence that the arbitration provision was prepared to be mailed specifically to Mr. McCoy. *See Diamond T. Utah, Inc. v. Canal Ins. Co.,* 12 Utah 2d 37, 41, 361 P.2d 665, 667 (1961) (stating insurer bears burden to prove insured was provided adequate notice). Although Blue Cross presented evidence from which one could infer that a notice of the arbitration provision was prepared for Mr. McCoy, Blue Cross failed

to present any direct evidence that the notice was prepared specifically for Mr. McCoy. Thus, Blue Cross not only failed to present sufficient evidence to show that it complied with its own notice provision, but also failed to establish an inference of mailing by failing to present direct evidence that notice of the arbitration agreement was prepared to be mailed to Mr. McCoy.

### 2. Waiver

¶ 21 In January 1995, Mr. McCoy received a letter from Mr. Pignanelli stating that "you have the right to seek binding arbitration of the dispute pursuant to the Rules of the American Arbitration Association. The Customer Service Department can assist you with information about how to initiate and participate in arbitration." Blue Cross argues that because Mr. McCoy retained the plan without objection for two years after receiving Mr. Pignanelli's letter, he accepted the terms of the arbitration agreement—waiving his right to challenge the arbitration provision. Again, we disagree.

¶ 22 Blue Cross relies on *Imperial Savings Ass'n v. Lewis,* 730 F.Supp. 1068 (D.Utah 1990), to support its argument that Mr. McCoy waived his right to challenge the arbitration provision. In that case, Stewart Title Company agreed to provide Imperial with a title insurance policy. *See id.* at 1070. Initially, Stewart sent Imperial a commitment for the policy, which did not contain an arbitration provision. *See id.* at 1071. Although there was conflicting evidence regarding whether Imperial received the original policy issued by Stewart, Imperial ultimately acknowledged receiving a copy of the arbitration provision in August 1988. *See id.* Apparently, Imperial reviewed the policy because "shortly after receipt of the [p]olicy, and because of having received it, Imperial contacted Stewart regarding coverage under the [p]olicy" and requested that Stewart indemnify it. *Id.* at 1073. Stewart denied Imperial's claim and, relying on the policy's arbitration provision, brought a motion to compel arbitration. *See id.* at 1070–71. Imperial objected to the arbitration provision in July 1989, arguing

that "the parties did not agree to arbitrate." *Id.* at 1071. The court granted Stewart's motion to compel arbitration concluding that "Imperial's receipt of a copy of the [p]olicy early in August 1988 and its retention for over eleven months without objection" was a sufficient period of time to constitute an acceptance of the arbitration provision. *Id.* at 1073.

¶ 23 In this case, Mr. Pignanelli's letter stated only that Mr. McCoy had "the right to seek binding arbitration of the dispute." Unlike the insured in *Imperial* who received and reviewed the specific terms of the arbitration agreement, the letter sent to Mr. McCoy merely informed him of his "right" to arbitration—leading Mr. McCoy to believe that arbitration was only one option available for dispute resolution. Mr. McCoy stated,

> I understood from Mr. Pignanelli's letter that I could request arbitration of Blue Cross's decision but was not required to resolve my dispute with Blue Cross through binding arbitration. I understood from Mr. Pignanelli's letter that I had the choice of resolving the dispute through arbitration or through the normal litigation process.

Furthermore, the evidence is insufficient to show that Mr. McCoy received the arbitration agreement or that he had an opportunity to review its terms. Thus, we conclude Mr. McCoy did not waive his right to challenge the arbitration provision because Mr. Pignanelli's letter did not provide Mr. McCoy with adequate notice of the specific terms of the arbitration policy.

### CONCLUSION

¶ 24 Blue Cross presented insufficient evidence to show that it adequately complied with its notice provisions or to establish an inference of mailing. We therefore reject Blue Cross's argument that Mr. McCoy received adequate notice of the arbitration provision. Furthermore, Mr. Pignanelli's letter did not give Mr. McCoy sufficient notice to implicate a valid waiver of his right to challenge the arbitration provision. We there-

fore conclude Blue Cross failed to establish the existence of a binding arbitration agreement. Accordingly, we affirm the trial court's order denying Blue Cross's motion to compel arbitration.

¶ 25 Affirmed.

¶ 26 WE CONCUR: PAMELA T. GREENWOOD, Associate Presiding Judge, and RUSSELL W. BENCH, Judge.